## THE UNITED STATES

*v.*

## HUDSON AND GOODWIN

1812.

Veb.  13th,

---

*Absent....Washington, justice.*

THIS was a case certified from the Circuit Court for the District of *Connecticut*, in which, upon argument of a general demurrer to an *indictment* for a libel on the President and Congress of the United States, contained in the *Connecticut Currant*, of the 7th of May, 1806, charging them with having in secret voted two millions of dollars as a present to Bonaparte for leave to make a treaty with Spain, the judges of that Court were divided in opinion upon the question, *whether the Circuit Court of the United States had a common law jurisdiction in cases of libel.*

PINKNEY, Attorney General, in behalf of the United States, and DANA for the Defendants, declined arguing the case.

The Court, having taken time to consider, the following opinion was delivered (on the last day of the term, all the judges being present) by JOHNSON, J.

The only question which this case presents is, whether the Circuit Courts of the United States can exercise a common law jurisdiction in criminal cases. We state it thus broadly because a decision on a case of libel will apply to every case in which jurisdiction is not vested in those Courts by statute.

Although this question is brought up now for the first time to be decided by this Court, we consider it as having been long since settled in public opinion. In no other case for many years has this jurisdiction been asserted; and the general acquiescence of legal men shews the prevalence of opinion in favor of the negative of the proposition.

*The courts of the U. States have no common law jurisdiction in cases of libel against the government of the United States. But they have the power to fine for contempts, to imprison for contumacy, and to enforce the observance of their orders, &c*

The course of reasoning which leads to this conclu-
sion is simple, obvious, and admits of but little illustra-
tion. The powers of the general Government are made
up of concessions from the several states—whatever is
not expressly given to the former, the latter expressly
reserve. The judicial power of the United States is a
constituent part of those concessions,—that power is to
be exercised by Courts organized for the purpose, and
brought into existence by an effort of the legislative pow-
er of the Union. Of all the Courts which the United
States may, under their general powers, constitute, one
only, the Supreme Court, possesses jurisdiction derived
immediately from the constitution, and of which the leg-
islative power cannot deprive it. All other Courts cre-
ated by the general Government possess no jurisdiction
but what is given them by the power that creates them,
and can be vested with none but what the power ceded
to the general Government will authorize them to confer.

It is not necessary to inquire whether the general
Government, in any and what extent, possesses the pow-
er of conferring on its Courts a jurisdiction in cases
similar to the present; it is enough that such jurisdic-
tion has not been conferred by any legislative act, if it
does not result to those Courts as a consequence of their
creation.

And such is the opinion of the majority of this Court:
For, the power which congress possess to create Courts
of inferior jurisdiction, necessarily implies the power
to limit the jurisdiction of those Courts to particular
objects; and when a Court is created, and its opera-
tions confined to certain specific objects, with what pro-
priety can it assume to itself a jurisdiction—much more
extended—in its nature very indefinite—applicable to a
great variety of subjects—varying in every state in the
Union—and with regard to which there exists no defin-
ite criterion of distribution between the district and
Circuit Courts of the same district?

The only ground on which it has ever been contended
that this jurisdiction could be maintained is, that, up-
on the formation of any political body, an implied pow-
er to preserve its own existence and promote the end
and object of its creation, necessarily results to it. But,

E

U. STATES *without examining how far this consideration is appli-*
*v.* cable to the peculiar character of our constitution, it
HUDSON & may be remarked that it is a principle by no means
GOODWIN. peculiar to the common law. It is coeval, probably,
with the first formation of a limited Government; be-
longs to a system of universal law, and may as well sup-
port the assumption of many other powers as those more
peculiarly acknowledged by the common law of England.

But if admitted as applicable to the state of things in
this country, the consequence would not result from it
which is here contended for. If it may communicate
certain implied powers to the general Government, it
would not follow that the Courts of that Government
are vested with jurisdiction over any particular act
done by an individual in supposed violation of the peace
and dignity of the sovereign power. The legislative
authority of the Union must first make an act a crime,
affix a punishment to it, and declare the Court that shall
have jurisdiction of the offence.

Certain implied powers must necessarily result to
our Courts of justice from the nature of their institution.
But jurisdiction of crimes against the state is not among
those powers. To fine for contempt—imprison for con-
tumacy—inforce the observance of order, &c. are pow-
ers which cannot be dispensed with in a Court, because
they are necessary to the exercise of all others : and so
far our Courts no doubt possess powers not immediately
derived from statute; but all exercise of criminal juris-
diction in common law cases we are of opinion is not
within their implied powers.