## Case No. 14,857.

UNITED STATES v. COOLIDGE et al.

[1 Gall. 488.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1813.[2]

CRIMINAL LAW—OFFENCES AGAINST UNITED STATES —FEDERAL JURISDICTION.

Whether the circuit court of the United States has jurisdiction over common law offences against the United States?

[Cited in Henfield's Case. Case· No. 6,360; Bains v. The James & Catherine, Id. 756; Allen v. Blunt, Id. 217; U. S. v. New Bedford Bridge. Id. 15.867; Re Metzger, Id. 9,-511. Cited in brief in McElrath v. McIntosh, Id. 8,781.]

[Cited in State v. Gaunt (Or.) 9 Pac. 58; U. S. v. Marshall. 6 Mackey, 35.]

[This was an indictment against Cornelius Coolidge and others for forcibly rescuing a prize.]

Before STORY, Circuit Justice, and DAVIS, District Judge.

STORY, Circuit Justice. The simple question is, whether the circuit court of the United States has jurisdiction to punish offences against the United States, which have not been previously defined, and a specific punishment affixed, by some statute of the United States. I do not think it necessary, to consider the more broad question, whether the United States, as a sovereign power, have entirely adopted the common law. This might lead to very elaborate inquiries, and the present question may well be decided, without entering upon the discussion. I admit in the most explicit terms, that the courts of the United States are courts of limited jurisdiction, and cannot exercise any authorities,

which are not confided to them by the constitution and laws made in pursuance thereof. But I do contend, that when once an authority is lawfully given, the nature and extent of that authority, and the mode, in which it shall be exercised, must be regulated by the rules of the common law. In my judgment, the whole difficulty and obscurity of the subject has arisen from losing sight of this distinction. Whether the common law of England, in its broadest sense, including equity and admiralty, as well as legal doctrines, be the common law of the United States or not, it can hardly be doubted, that the constitution and laws of the United States are predicated upon the existence of the common law. This has not, as I recollect, been denied by any person, who has maturely weighed the subject, and will abundantly appear upon the slightest examination. The constitution of the United States, for instance, provides that "the trial of all crimes, except in cases of impeachment, shall be by jury." I suppose that no person can doubt, that for the explanation of these terms, and for the mode ·of conducting trials by jury, recourse must be had to the common law. So the clause, that "the judicial power shall extend to all cases in law and equity arising under the constitution." &c. is inexplicable, without reference to the common law; and the extent of this power must be measured by the powers of courts of law and equity, as exercised and established by that system. Innumerable instances of a like nature may be adduced. I will mention but one more, and that is in the clause providing, that the privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it. What is the writ of habeas corpus? What is the privilege which it grants? The common law, and that alone, furnishes the true answer. The existence. therefore, of the common law is not only supposed by the constitution. but is appealed to for the construction and interpretation of its powers.

There can be no doubt, that congress may, under the constitution. confide to the circuit court jurisdiction of all offences against the United States. Has it so done? The judicial act of 24th of September, 1789, c. 20, § 11 [1 Stat. 78], provides, that the circuit court "shall have exclusive cognizance of all crimes and offences cognizable under the authority of the United States, except where that act otherwise provides, or the laws of the United States shall otherwise direct, and concurrent jurisdiction with the district courts of the crimes and. offences cognizable therein." No subsequent act has narrowed the jurisdiction; it remains therefore in full operation. The jurisdiction is not, as has sometimes been supposed in argument, over all crimes and offences specially created and defined by statute. It is of all crimes and offences "cognizable under the authority of the United States," that is, of all crimes and offences, to

---

[1] [Reported by John Gallison, Esq.]
[2] [Reversed in 1 Wheat. (14 U. S.) 415.]

which by the constitution of the United States, the judicial power extends. The jurisdiction could not, therefore, have been given in more broad and comprehensive terms.

The court then having complete jurisdiction, the next point will be to ascertain, what are crimes and offences against the United States. And here I contend, that recourse must be had to the principles of the common law, taken in connexion with the constitution, in order to fix the definition, precisely as in other laws of congress, we resort to the rules of the common law to give them an interpretation. For instance, congress has provided for the punishment of murder, manslaughter and perjury, under certain circumstances; but it has no where defined these crimes. Yet no doubt is ever entertained on trials, that the explanation of them must be sought and exclusively governed by the common law; and upon any other supposition, the judicial power of the United States would be left, in its exercise, to the mere arbitrary pleasure of the judges, to an uncontrollable and undefined discretion. Whatever may be the dread of the common law, I presume, that such a despotic power could hardly be deemed more desirable. The necessity and propriety of this principle will be rendered still more apparent upon a further consideration. There are a great variety of cases arising under the laws of the United States, and particularly those which regard the judicial power, in which the legislative will cannot be effectuated, unless by the adoption of the common law. Many cases may be governed by the laws of the respective states; but still whole classes remain, which cannot be thus disposed of. For example, in Massachusetts no courts of equity exist, and consequently no recognition of the principles or practices of equity, as contradistinguished from law. How then shall a suit in equity pending in the circuit court for that district be managed or decided? There is no law of the United States, which provides for the process, the pleadings, or the principles of adjudication. By what rules then shall the court proceed? Certainly all reasoning and all practice pronounce, by the rules of equity recognised and enforced in the equity courts of England. The illustration is yet more decisive, as to causes of admiralty and maritime jurisdiction; for these exclusively belong to the United States, and nothing in the laws or practice of the respective states can regulate the proceedings or the principles of decision. In my judgment, nothing is more clear, than that the interpretation and exercise of the vested jurisdiction of the courts of the United States must, in the absence of positive law, be governed exclusively by the common law.

I would ask then, what are crimes and offences against the United States, under the construction of its limited sovereignty, by the rules of the common law? Without pretending to enumerate them in detail, I will venture to assert generally, that all offences against the sovereignty, the public rights, the public justice, the public peace, the public trade and the public police of the United States, are crimes and offences against the United States. From the nature of the sovereignty of the United States, which is limited and circumscribed, it is clear that many common law offences, under each of these heads, will still remain cognizable by the states; but whenever the offence is directed against the sovereignty or powers, confided to the United States, it is cognizable under its authority. Upon these principles and independent of any statute, I presume that treasons, and conspiracies to commit treason, embezzlement of the public records, bribery and resistance of the judicial process, riots and misdemeanors on the high seas, frauds and obstructions of the public laws of trade, and robbery and embezzlement of the mail of the United States, would be offences against the United States. At common law, these are clearly public offences, and when directed against the United States, they must upon principle be deemed offences against the United States. If then it be true, that these are offences against the United States, and the circuit court have cognizance thereof, does it not unavoidably follow, that the court must have a right to punish them? In my judgment no proposition of law admits of more perfect demonstration. To suppose a power in a court to try an offence, and not to award any punishment, is to suppose, that the legislature is guilty of the folly of promoting litigation without object, and prohibiting acts, only for the purpose of their being scoffed at in the most solemn manner. If, therefore, it authorize a trial of an offence, it must be deemed to authorize the court to render such a judgment, as the guilt or innocence of the party may require. As to civil actions, the application of the principle has never admitted a doubt; yet in no instance, that I recollect, is the form or the substance of the judgments prescribed by any law. These judgments, however, must unavoidably differ, not only in different actions, but in the same action, according to the nature of the claims and the pleadings of the parties. It is no answer, to say, that the laws of the states will govern in such cases; for these are not always applicable, as suits may be brought in the United States courts, which are not cognizable by state courts; as for instance, equity and admiralty causes. And further, no such general and universal adoption of the practice or laws of the states has been authorized by congress, or sanctioned by the courts of the United States. The invariable usage of these courts has been, in all cases not governed by state laws, to regulate the pleadings and pronounce the judgment of the common law. When I speak here of the common law, I use the word in its largest sense, as including the whole system of English jurisprudence. For the same reason, therefore, that governs in civil causes, I hold that the cognizance of offences includes the power of rendering a

judgment of punishment, when the guilt of the party is ascertained by a trial.

But it may be asked, what punishment shall be inflicted? The common law affords the proper answer. It is a settled principle, that where an offence exists, to which no specific punishment is affixed by statute, it is punishable by fine and imprisonment. This is so invariably true, that, in all cases, where the legislature prohibit any act without annexing any punishment, the common law considers it an indictable offence, and attaches to the breach the penalty of fine and imprisonment. Com. Dig. "Indictment," D; 8 Coke, 60b; 2 Inst. 131; Bac. Abr. "Fine," D. I have no difficulty in saying, that the same rule must be held to exist here, for the same reason that it is adopted there. If, therefore, treason had been left without punishment by the act of congress, I have no doubt, that the punishment by fine and imprisonment must have attached to the offence.

Upon what ground the common law can be referred to, and made the rule of decision in criminal trials in the courts of the United States, and not in the judgment or punishment, I am at a loss to conceive. In criminal cases, the right of trial by jury is preserved, but the proceedings are not specifically regulated. The forms of the indictment and pleadings, the definition and extent of the crime, in some cases the right of challenge, and in all the admission and rejection of evidence, are left unprovided for. Upon what ground then do the courts apply in such cases the rules of the common law? I can perceive no correct ground, unless it be, that the legislature have constantly had in view the rules of the common law, and deemed their application in casibus omissis peremptory upon the courts. The privilege of the writ of habeas corpus is so high and interesting, that it has become a prominent article in the constitution; and the judicial act of the 24th of September, 1789, c. 20, § 14, has authorized the courts of the United States, and the judges thereof, to issue that writ. But if nothing more could be done under it, than the legislature have expressly provided, it would be a mere dead letter for its most important purposes. It is only by engrafting on the authority of the statute the doctrines of the common law, that this writ is made the great bulwark of the citizen against the oppressions of the government. I might enforce the view, which I have already taken of this subject, by an examination in detail of the organization and exercise of the judicial powers of the courts of the United States, with reference to their equity, admiralty, and legal jurisdiction; but it cannot be necessary. If I am right in the positions, which I have already assumed and explained, there is an end of the question, which has been submitted. If I am wrong, the error is so fundamental, that I cannot hope to reach its source by any merely illustrative process.

The result of my opinion is: 1. That the circuit court has cognizance of all offences against the United States. 2. That what those offences are, depends upon the common law applied to the sovereignty and authorities confided to the United States. 3. That the circuit court, having cognizance of all offences against the United States, may punish them by fine and imprisonment, where no punishment is specially provided by statute. I have considered the point, as one open to be discussed, notwithstanding the decision in U. S. v. Hudson (February term, 1812 [7 Cranch (11 U. S.) 32]), which certainly is entitled to the most respectful consideration; but having been made without argument, and by a majority only of the court, I hope that it is not an improper course to bring the subject again in review for a more solemn decision, as it is not a question of mere ordinary import, but vitally affects the jurisdiction of the courts of the United States; a jurisdiction which they cannot lawfully enlarge or diminish. I shall submit, with the utmost cheerfulness, to the judgment of my brethren, and if I have hazarded a rash opinion, I have the consolation to know, that their superior learning and ability will save the public from an injury by my error. That decision, however broad in its language, has not, as I conceive, settled the question now before the court, so far as it respects offences of admiralty and maritime jurisdiction. The constitution has given to the judicial power of the United States the jurisdiction as "to all cases of admiralty and maritime jurisdiction," and this jurisdiction of course comprehends criminal, as well as civil suits. The admiralty is a court of extensive criminal, as well as civil jurisdiction, and has immemorially exercised both. At least no legal doubt of its criminal authority has ever been successfully urged. By the law of the admiralty, offences, for which no punishment is specially prescribed, are punishable by fine and imprisonment (see Clarke, Praxis Adm. tit. 60, sub finem); and as offences of admiralty jurisdiction are exclusively cognizable by the United States, it follows that all such offences are offences against the United States. We have adopted the law of the admiralty in all civil causes cognizable by the admiralty: must it not also be adopted in offences cognizable by the admiralty? It will perhaps be said, that express jurisdiction is given in civil cases of admiralty jurisdiction, but not in criminal cases. This is true in terms; but I contend, that criminal cases are necessarily included in the grant of cognizance of all "crimes and offences cognizable under the authority of the United States;" for crimes and offences within the admiralty jurisdiction are not only cognizable, but cognizable exclusively under the authority of the United States. And congress, in punishing certain offences upon the high seas, which are neither piracies nor felonies, have undoubtedly acted upon the conviction, that such offences were of admiralty and maritime jurisdiction. See Act Sept. 24, 1789, c. 20, §§ 12, 13, 16, 17, etc. Whatever room, therefore,

there may be for doubt, as to what common law offences are offences against the United States, there can be none as to admiralty offences. If this be true, then the reasoning, which I have before urged, applies in its full force, and I will not take up time in repeating it. On the whole, my judgment is, that all offences within the admiralty jurisdiction are cognizable by the circuit court, and in the absence of positive law are punishable by fine and imprisonment.

See 4 Bl. Comm. 5, 44, 268; 2 Browne, Civ. & Adm. Law.

DAVIS, District Judge, did not concur, with a view to bring the question solemnly before the supreme court; so it was certified to the supreme court, as upon a division of the judges.

NOTE. Reversed by supreme court. 1 Wheat. [14 U. S.] 415. See, also, U. S. v. Hudson, 7 Cranch [11 U. S.] 32. But see the judgment, where the point seems left still unsettled. The attorney general declined arguing the case, because he considered the point as decided in U. S. v. Hudson. The majority of the court were willing to hear the argument, but no counsel appeared for the defendant. The decision was reversed on the authority of the case in 7 Cranch [11 U. S.]. See, also, U. S. v. Bevans, 3 Wheat. [16 U. S.] 336; U. S. v. Wiltberger, 5 Wheat. [18 U. S.] 76; Smith v. Jackson [Case No. 13,064]. See 1 Kent, Comm. 334–343.