In re Alex. Campbell.

----

## In re Alex. Campbell.

An attorney and counsellor at law is admitted to practice during good behavior.

It is not necessary to constitute contempt that the act should be done in open Court.

Anything done intentionally to insult the Court, in the exercise of its legal powers, is a contempt, which may be punished summarily.

Publications libelling Superior Courts may be punished as contempt.

Allen, C. J.

This is a motion to vacate an order made by the full Court, on the 30th day of March last, to strike the name of Alexander Campbell from the roll of Attorneys of this Court, and to prohibit him from further practice, for contempt of Court.

If this was a matter between other parties than the Court and an attorney, who is an officer of the Court, our opinion would be that we should have no power to review or set aside the former order. We could only rectify or amend what appeared clearly a mistake or clerical error. If the right was asserted to control the proceedings of any other Court of Record, it could not be entertained ; for when a court commits a party for contempt, their adjudication is a conviction, and the commitment in consequence is execution. And so the law has been settled. (3 Wilson, 188; 5 Curtiss, 211.)

To regard the decisions of the Supreme Court as final is a constitutional principle ; but as no private party has any imme-

diate interest in the result of this motion, it being a matter purely between the attorney who makes the motion and the Court, we have thought it the exercise of a sound discretion to entertain it. The Court felt a strong desire to hear the attorney, hoping that he would put himself *rectus in curia*.

It appears that Judge Robertson, at the time superintending member of the Court, received a communication from one of the departments of the Government which satisfied him that Louis Franconi was a Swiss citizen, and as such not entitled to be tried by a jury nominated by the Consul of France, which privilege had been claimed for him by his counsel, Mr. Campbell, and conceded by the Clerk with the sanction of the Court, under the belief that Franconi was a French subject. Judge Robertson seeing reason to suspect that some misrepresentation or mistake had been made in regard to Franconi's nationality, so that he would obtain a privilege to which he was not entitled, and the case having led to a diplomatic correspondence with the representative of France, considered it his duty to ascertain, on behalf of the Court, a true statement of the case, and with that view addressed a note to Mr. Campbell, the Attorney of Record in the case.

The case was still pending, and as the April Term was approaching, it was necessary to have the preliminary question as to the jury fully set at rest before the case came on for trial, both in justice to the accused and to the prosecution. It was doubtless the duty of the Court to have full information of the matter.

Such are the circumstances under which the letter of Judge Robertson was written on the 16th of March. Mr. Campbell regarded the letter of Judge Robertson as not of a judicial character, but private and offensive, and replied to it in terms which the Court regarded as offensive and insulting, and subversive of all public respect and consideration if its officers were permitted to assume over them a tone of defiance and insult. That they, at a special session, declared that "he (Judge Robertson) in writing that letter was in the discharge of his official duty as a member of this Court, and that he was entitled to receive a courteous reply thereto, which he had not done, but on the contrary the letter addressed to him by Mr.

Campbell in reply was of a character grossly insulting, and plainly calculated to destroy the respect due to the Court. And therefore the Court did order that the name of Alexander Campbell be stricken from the roll of practitioners of this Court, and that he be strictly prohibited from this day forth from practising in said Court as an attorney, counsellor, or solicitor thereof."

The first ground on which we are asked to vacate the order is, that it was made at a special session of the Court, without previous notice to Mr. Campbell, and without his having had an opportunity of being heard in his defense.    The practise of the courts has always been according to the requirement of each case.    When complaints have been made against attorneys for malpractice by third parties, as a matter of course a rule would be made for the attorney to show cause ; but when the whole case had transpired between the Court and the attorney, as for example when a contempt was incurred in open court, and when there was no controversy about the facts, and of course no occasion for any additional inquiry, a rule to show cause has not been regarded imperative or necessary.

That the Court acted in the strict legal rule, we refer to 3 Wilson, 14 East, 1.    For contemptuous words spoken of the court attachment goes without a rule to show cause.    (1 Salkeld, 84 ; 2 Burrow's R., 654, Charlton's case, Harrison's Digest, 1558.)    Where the contempt is by abusive words, on the process of the Court, attachment goes without a hearing. (2 Comyn's Digest, 221.) If a man does a thing which deserves his being struck off the roll, it may be examined and determined in a summary way.

The courts of the United States are authorized by law to punish for contempt in a summary way, notwithstanding the provision in the Constitution of the United States directing that all crimes shall be tried by jury.    The provision relates to such crimes only as by law and custom have before been tried by jury.    (Hollingsworth *vs.* Duane, Wallace, 77, 106.) Chief Justice Story, in the case of ——— — ———, 2 Curtiss, 447, says : " To fine for contempt, imprison for contumacy, enforce the observance of order, etc., are powers which can not be dispensed with in a court, because they are necessary to the exercise of all others."

In re Alex. Campbell.

In a recent case in the Superior Court in Suffolk County, Massachusetts, the court say that it is by no means necessary that the act claimed to constitute a contempt should be done in the presence of the court or while it is in session. " Any thing wilfully or designedly done for the purpose of insulting and degrading the court in the exercise of its legal powers, or to hinder, impede or prevent its proper, legitimate action in the discharge of its duties, is a contempt which may be punished summarily, without resorting to the ordinary and usual modes provided for the trial and punishment of crimes."

It is perfectly clear as to the courts at Westminster that contempts may not only be in the face of the court, but they may be committed out of the court. Publications libelling superior courts may be punished as contempts. (4 Barn. & Ald. Rep., 233.) Without this power it might be impossible for courts to proceed in the discharge of their duties.

In the case before us, according to the principle of the foregoing, the letter written by Mr. Campbell was the same in effect as if he had used the same insulting language in open court. Both letters were before the Court, and they constituted the whole case, and there seemed to be no necessity for any examination, any more than there would have been had the contempt been committed in the face of the Court.

The Court deemed it, if not their duty, at least within their discretion, to hear him, and he has offered all the objections he deemed proper against the former order. The Court are not aware that any new light has been shed on the history of the case. The facts of the case were as clearly before the Court when they issued the order as now.

It is not claimed that Mr. Campbell was desirous of submitting or tendering an apology to the Court, had an opportunity been afforded him of so doing. And now, when the Court have explicitly declared that the letter of Judge Robertson was written in a judicial character, and in clear discharge of his duty, still Mr. Campbell persists in regarding it as a private letter, and that he had a right to reply in terms of insult and defiance. What injury then has he suffered by not having been cited to appear in the first instance ? for with this subsequent avowal of the Court, he has not thought proper even to withdraw the offensive portions of his own letter.

In re Alex. Campbell.

Mr. Campbell contends that in dismissing him from the Bar for contempt, the Court exceeded its powers, because, he argues, that at common law the punishment for contempt was by fine and imprisonment, and the power of the Court did not extend to striking an attorney from the roll; and further, that the power of this Court to punish for contempt is limited and defined by Statute of 1850. (Penal Code, p. 69, Sec. 18.)

It is further contended that " it makes no difference that the accused is a lawyer and an officer of the Court."

*The powers* of an attorney as an officer of the Court are very extensive. He may waive objections to evidence, make admissions in pleading, or by parol, enter nonsuit and default, and make any disposition of the suit, and any admission of facts that the party himself could make. (2 N. H. Rep., 520.) The Court is of opinion that there is a material distinction between those who are, and those who are not, officers of the Court, and that this distinction has always been sustained. The powers and privileges of an attorney are very great in court, and the common law doctrine is that the power to punish for contempt is incident to and necessary for their very existence. The only question is not upon the existence of the power, but whether the facts established call for its exercise. If the power did not extend to striking from the roll, the Court would not have full power for its protection from that kind of annoyance, which would not only bring it into disrepute, but would impede its business and destroy its usefulness.

In 5 Barn. and Ald. Reports, 825, Abbott, Chief Justice, says : " Upon the facts reported to us by the Master, we are of opinion that this is not a case within the act of Parliament, but at the same time a case of most improper practice. If a bailiff be allowed to obtain writs in the manner stated in this report, the client will be wholly deprived of that attention he ought to receive from the attorney ; and although this case be not within the statute, still the court, in virtue of its general jurisdiction over attorneys, has the power of restraining this practice ; but as this is the first time that such a matter has been presented to this court, we do not think it right to order the attorney to be stricken off the roll in this instance."

In the case, exparte Tillingham, 4 Peters, 109, Chief Justice Marshall recognizes the power and authority of the Court to strike an attorney from the roll for contempt.

The Court, in support of the doctrine of the power at common law of courts of superior jurisdiction to strike an attorney from the roll for contempt, as well as that he was not a fit and proper member of a profession, which should stand free from all suspicion, cite Campbell, 829 ; 8 Adolphus & Ellis, 133 ; 4 Peters, 108 ; 7 Cranch, 32 ; 5 Barn. & Ald., 218 ; 5 ib. 824.

In Foster's Rep., 4 vol., 158, the Court say : " We have no doubt that although applicants for admission to practice on the ground of good moral character, are to be admitted by the superior court, yet they may be removed from office, or suspended from practice in the common pleas, by the court, upon good charge shown. Such a power is necessarily inherent in every court, in order to enable it to discharge its duties, as much so as the power to preserve order." (Foster's Rep., 156.)

In a recent case in England, when an attorney had been convicted of a misdemeanor, but judgment was reversed for insufficiency of indictment, Lord C. J. Denman says : " The present proceeding, as was laid down in exparte Braundall, 2 Camp., 829, is not a punishment for a legal crime, but an exercise of the discretion of the court upon the question, ' whether a man whom they have formerly admitted is a proper person to be continued on the roll or not.' We think that the indictment and the verdict must be valid to the extent of preventing the attorney from having our sanction to practice." (Adolph. & Ellis Rep., N. 5, vol. 8, 133.)

Furthermore, any person receiving a license to practice as an attorney and counsellor of this Court, takes it with the express condition that he is admitted to practice during good behavior, and it is so expressed in the license. (Vol. 2, Statute Laws, p. 8, Sec. 12.) This trust is given to the Court for the public benefit, as attorneys unworthy of their profession contribute very much to the litigation of a community, and all improper practices. And there are occasionally cases when a withdrawal of a license is a duty on the part of the Court. Fortunately it is very rare. An apprehension has been expressed lest this power should be abused. The tendency of

the times is to relax the severity of the former discipline, and to exercise the power over contempts with extreme moderation. Chancellor Kent says that the power to punish for contempt is given to the courts only for their preservation, in order to enable them to repel insults, to protect suitors, to support their process, and to be an asylum from violence and oppression.

It is also contended by Mr. Campbell, that the letter of Judge Robertson and his reply were not papers of a judicial character. The Court declare that the letter was judicial, written in relation to a case pending, and in which Mr. Campbell was the attorney of record. He is an experienced and able lawyer, and knows perfectly well the duties and obligations of an officer of the Court. Had he reasonable grounds to regard the letter as private? It was written for explanation in relation to a judicial matter pending, and in relation to which a diplomatic correspondence had already taken place. It could be regarded in no sense as private; if he entertained doubts about it, it was clearly his duty, as an officer of the Court, to have made inquiry of the Court in relation to its purport and meaning. I should regard an insult by the Court to an attorney, as an evidence of entire want of all proper appreciation of the relation existing between the Court and its officers, and a gross violation of public duty, and our view is that Mr. Campbell had no just grounds to regard the letter as a private one. The Court regarded Judge Robertson, in writing the letter, as acting in a judicial capacity, and therefore, of course they consider the reply as addressed to them. Such being the case, could the Court do otherwise than regard the letter of Judge Campbell as a gross contempt, as he expressly declared in his argument on the motion to vacate the order, that he had replied to an insulting letter in terms of indignation and defiance; "that he had met insult with insult."

It is impossible for the Court to discharge its duties usefully, or have the public respect and consideration, if its officers are permitted to assume towards them a tone of defiance and insult. Mr. Campbell does not assert that if he was mistaken in the character of the letter of the Associate Justice, that he would withdraw the offensive portion of his own letter, or express a regret or apology for a communication avowedly insulting.

In the history of Courts, there has been fortunately very few cases of this character. The case of Charlton is somewhat analagous, and was summarily punished, and is cited in Harrison's Digest, vol. 1, p. 1558, as follows :

" A barrister, who was also a member of Parliament, appeared before a Master as counsel in support of a petition presented by himself and others, and he afterwards addressed a letter to the Master, which was expressed in threatening terms, and the tendency of which was to induce the Master to alter the opinion the Master was supposed to have formed upon the case ; and he subsequently wrote a letter to the Lord Chancellor, in which he avowed the authorship of the letter to the Master. The Lord Chancellor committed him to the Fleet during pleasure."

Striking an attorney off the roll, is not always understood to be a perpetual disability, for the Court has in some instances permitted him to be restored, considering the punishment in the light of a suspension only. This is the view taken in Tidd's Practice.

In order to sustain the present motion, a reasonable ground of doubt as to the legality of the order should be presented to the Court. It was a question within their jurisdiction, and a punishment given within their legal power and discretion, according to their view of the contempt imposed upon them, and therefore the Court decline to vacate the order.

The motion is denied.