Loretta M. CIMEO

v.

**EAST WHITELAND–TREDYFFRIN JOINT TRANSPORTATION AUTHORITY.**

Civ. A. No. 93–2494.

United States District Court, E.D. Pennsylvania.

Sept. 30, 1993.

Jonathan A. Van Loan, Frazer, PA, for plaintiff.

Jane M. Shields, Siana & Shields, Exton, PA, for defendant.

## MEMORANDUM

DALZELL, District Judge.

This action was filed by an attorney on behalf of a former client who had not authorized the filing of the suit and who repudiated the suit as soon as she learned had been filed. Notwithstanding these, and other equally remarkable facts, this lawyer did not dismiss the action, but remained silent as the defendant was put to the expense of filing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), which we granted as unopposed on July 22, 1993.

After we granted the Rule 12 motion, the defendant, East Whiteland–Tredyffrin Joint Transportation Authority (the "Authority"), filed a motion for sanctions pursuant to Fed. R.Civ.P. 11 against both the attorney and the plaintiff. On learning that the plaintiff had never authorized the filing of the suit, and had done everything she could to prevent its prosecution, the Authority amended its motion to seek sanctions against the lawyer only. For the reasons that follow, we will grant the Authority's motion under Rule 11, buttressed by our inherent power over attorneys who are admitted to practice before our Court.

### Background

Loretta Morelli Cimeo is a trustee under a Deed of Trust, dated March 10, 1969, known as the "Graham Trust". Pursuant to a Declaration of Taking, filed with the Court of Common Pleas of Chester County, Pennsylvania, the Authority condemned a property known as the "Sun Property" that the Graham Trust owned, as part of what the Authority described as its "Route 29 Reconstruction Project". On or about March 4, 1992, Mrs. Cimeo and other parties with interests in the Sun Property agreed to accept $105,160 as "just compensation" for the taking of the Sun Property.

Apparently, all of the Morelli family members except Mrs. Ada Morelli agreed that the entire sum should be paid to Loretta M. Cimeo "as trustee" of the Graham Trust. Mrs. Ada Morelli is said to have demanded that her one-eighth share be remitted directly to her instead of through the Trust. In response, the Authority filed a petition with the Chester County Court of Common Pleas seeking court approval to pay the agreed $105,160 into court for distribution to the appropriate parties in accordance with § 522 of the Pennsylvania Eminent Domain Code, 26 Pa.Stat.Ann. § 1–522 (1993 Supp.). By Order dated June 28, 1993, Judge Lawrence E. Wood granted leave to the Authority to pay these funds into court.

Notwithstanding these actions, Jonathan Ambrose Van Loan, Esquire, on October 16, 1992 wrote to Mrs. Cimeo to propose a suit against Ada Morelli and others, *not* mentioning the Authority, who were "involved in delaying the payment of funds for your property", and this suit would allege "a criminal conspiracy to deprive you of your property, which is a violation of your constitutional rights." Van Loan sought the payment of a retainer which, apparently, was transmitted by Mrs. Cimeo's brother, Thomas W. Morelli.

Though $2,500 was remitted to him ($1,000 more than sought as the initial installment), Van Loan filed no suit against anyone. As a result, Thomas Morelli, on behalf of his sister, on November 13, 1992 wrote to Van Loan demanding the return of the $2,500 "or I will have no alternative except to file a complaint with the Disciplinary Council of the Pennsylvania Supreme Court." When these funds were not returned, Mrs. Cimeo sued Van Loan in the Chester County, Pennsylvania, District Court, and on January 4, 1993 she obtained a judgment against Van Loan of $2,538.79. Since Van Loan took no appeal, the judgment apparently became final on February 11, 1993, and Mrs. Cimeo commenced execution against Van Loan on February 17, 1993.

Notwithstanding these events, on May 11, 1993, Van Loan filed the instant action in this Court solely against the Authority[1], and the next day sent a letter to Mrs. Cimeo that is sufficiently extraordinary that it will be reproduced in full:

Dear Mrs. Cimeo,

Please find enclosed a copy of the Complaint filed in Federal District Court on Tuesday May 11th, 1993.

I ask that you notify in writing the Disciplinary Board of The Supreme Court of Pennsylvania that I have begun this litigation. I ask that you inform The Board that I have begun to complete my obligation to you. I am scheduled to receive an informal admonition on Tuesday May 25th, 1993, and I would like very much not to have to appear before The Board.

I ask also that you direct your lawyers to mark the Judgment you hold against me in Chester County Court of Common Pleas as satisfied.

Finally, I ask that you submit $1,500.00 to me as the balance due on the litigation against the Joint Transportation Authority in Federal Court, within ten days of the date of this letter.

Cordially,

Jonathan Van Loan

Understandably shocked by both the filing and the May 12 letter, Mrs. Cimeo's brother wrote back to Van Loan the next day on behalf of his sister:

Dear Jonathon [sic]:

I learned with dismay that you did not do as you agreed regarding the lawsuit for the reimbursement of the funds to my family members and myself for the taking of our property and the conspiracy trial regarding persons involved. Your agreement to allow me to see the lawsuit papers first was also violated by you. You know that neither me nor my family would have any interest in suing the Route 29 Task Force Authority solely. You have wasted our time and yours.

We are quite disturbed by the fact that we asked you for one service and received another that is useless for the result that we wanted. Therefore, please terminate any efforts on our behalf that you may have begun. Also, please return to me the $2,500.00 check and any papers you may have regarding our case.

Sincerely,

Thomas W. Morelli For Loretto M. Cimio [sic]

The Authority on June 3, 1993 acknowledged service of the summons and complaint, and on June 21, 1993 filed its Rule 12 motion to dismiss. On July 22, we granted the motion as unopposed.

On August 4, the Authority filed a motion for sanctions against Mrs. Cimeo for $2,164.72. In what may constitute the most remarkable letter of this correspondence, Van Loan wrote the following text in a letter transmitting the Authority's sanctions motion to Mrs. Cimeo:

Dear Mrs. Cimeo:

Please find enclosed a copy of documents the attorneys for the JTA have filed in court. They claim our case against the JTA had no merit and are seeking attorneys' fees against you personally, in the amount of $2,164.72.

I believe their motion can be successfully defended and I will do so for $750.00. Some response to the motion should be filed or the Court may make the award.

Until our next communication I remain

Very Truly Yours,

Jonathan A. Van Loan

Rather than advance the $750.00 that Van Loan so modestly requested, on August 19 Mrs. Cimeo filed her own, *pro se* response to the Authority's motion, attaching to it the correspondence referred to and quoted above. Her certificate of service states that her response was served on the Authority's counsel but not Van Loan. In view of Mrs. Cimeo's response, we on August 20, 1993 ordered Van Loan to file a response by September 1, and set a hearing on the motion for September 8. Van Loan filed nothing on September 1.

1. Jurisdiction was asserted under "28 U.S.C. § 1331 and the Fifth and Fourteenth Amendments to the United States Constitution." Complaint ¶ 3.

At the September 8 hearing, Van Loan admitted the authenticity of each letter attached to Mrs. Cimeo's response,[2] and also admitted that he had received or sent all the subject correspondence. In view of these admissions, the Authority's counsel stated that her client's motion would be amended to seek sanctions only from Van Loan, not Mrs. Cimeo. Van Loan did not on September 8 contest the reasonableness of the time, or hourly rates, of the Authority's counsel in filing the Authority's Rule 12 motion.[3]

In view of the gravity of the issue against Van Loan, we again ordered him to file a formal response to which the Authority could file a reply. Van Loan filed a two-page "Response" to Mrs. Cimeo's Response on September 20.[4]

*Legal Analysis*

 Van Loan's signature on the complaint, filed notwithstanding the absence of

authority from his client, could not have been done "after reasonable inquiry" or upon the belief that it was "well grounded in fact and ... warranted by existing law" within the meaning of Fed.R.Civ.P. 11. A complaint cannot be "well grounded in fact" if a client does not authorize its filing. Although this holding seems clear and easily reached,[5] we are most troubled by this conduct of a member of the bar of this Court to a former client, and therefore are constrained to add a few observations.

At the September 8 hearing, Van Loan defended his actions by stating that he believed it was "wrong" for the Authority to delay the payment for the Sun Property, and that the constitutional consequences of this delay should be adjudicated by a federal court notwithstanding the fact that his client did not seek that relief. Rule 1.2(a) of the Pennsylvania Rules of Professional Conduct

---

**2.** Van Loan professed to have seen the response and its exhibits for the first time at the hearing. We provided him with a complete copy after the hearing. .

**3.** At the hearing, we received exhibits from the Authority which documented $2,597.77 incurred by the firm of Siana & Shields and $484.00 incurred by Ross A. Unruh, Esquire, in connection with responding to Van Loan's complaint. We find both the hours and hourly rates of the lawyers involved to be entirely reasonable and properly incurred in preparing and filing the Rule 12 motion and accompanying memorandum of law.

**4.** At the September 8 hearing, Van Loan suggested that he had a telephone conference with Mrs. Cimeo's brother on May 7 and obtained authority for filing the Complaint. At the same hearing, however, Van Loan for the first time saw the correspondence attached to Mrs. Cimeo's response to the Rule 11 motion. As mentioned above, this correspondence included her brother's letter of May 13 repudiating, on her behalf, the suit that had been filed two days before. Doubtless upon reflection of his admitted receipt of this May 13 letter, in his September 20, 1993 response, Van Loan now states that, contrary to the May 13 letter, Mr. Morelli "indicated that he wished ... to proceed with the action" in a telephone conversation on "or about Friday, May 14, 1993," and, therefore; "[o]n Tuesday, May 18th, 1993, Van Loan filed the Complaint against the Authority." Counsel's response ¶ 4. This September 20 statement is an obvious fabrication, because the docket sheet in this case confirms, consistent with the May 12 and May 13

letters, that the complaint was filed on May 11, 1993, and not a week later. We therefore find that Van Loan's attempt to rewrite the testimony he gave on September 8 to be merely his way of trying to escape the consequences of Mr. Morelli's May 13 letter.

**5.** We are aware of our Court of Appeals' supervisory rule "that all motions requesting Rule 11 sanctions be filed in the district court before the entry of a final judgment." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 100 (3d Cir.1988). It is quite apparent from the exceptional record in this case that the Authority's motion could not have been filed any earlier than it did, since it could not conceivably have anticipated the bizarre events now familiar to it and the Court. In any event, the motion was filed eight business days after the entry of our Order granting the motion to dismiss and entering judgment in its favor. We therefore regard defendant's motion as timely in compliance with *Lingle's* supervisory rule.

Additionally, even if we momentarily credit Van Loan's imagined telephone conversation with Mrs. Cimeo's brother, the chronology of events involving her *agreed* acceptance of $105,-160.00 as just compensation from the Authority, and the Authority's actions in seeking approval of this settlement in the face of Ada Morelli's refusal to sign the agreement, could not, conformably with Rule 11, justify Van Loan's signature on this Complaint. If any doubt exists on this point, it evaporates when it is recalled that Van Loan failed to oppose the Authority's motion, and subsequently has failed to cite any decision or reason justifying his signature on this Complaint.

forbids the kind of roving commission Van Loan claims he had independent of his erstwhile client's wishes ("A lawyer shall abide by a client's decisions concerning the objectives of representation....").

Further, on the face of his May 12 letter to Mrs. Cimeo, it is clear that the reason Van Loan filed the suit was to try to resolve the pending disciplinary action against him that was the result of his refusal to return the $2,500.00 for which his former client obtained a judgment against him in January, 1993. To the extent the filing was intended to relieve such pressure, this was an "improper purpose" for instituting suit against a defendant never even mentioned to his former client.[6]

Even if we were to take the most charitable reading of this record, however, Van Loan should at a minimum have dismissed this action pursuant to Fed.R.Civ.P. 41(a)(1) after he learned that his client had repudiated the suit. On such a reading, of course, there would not be a Rule 11 predicate to sanctioning Van Loan because of the absence of any filing. Such a reading would not, however, leave us powerless to redress Van Loan's cavalier conduct. Our inherent power over attorneys who practice before us gives ample authority to make the Authority whole for the legal services and expenses it unnecessarily incurred because Van Loan failed to dismiss this action after he learned that his client had no claim she wished to pursue against the Authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), *see also Ex parte Burr*, 22 U.S. 529, 9 Wheat. 529, 531, 6 L.Ed. 152 (1824).

But we need not reach to this immemorial[7] source of authority to sanction Van Loan. Putting aside his want of a client or of authority to bring suit, there simply was no basis for filing this action against the Authority. Van Loan's hypothesized client

had agreed with the Authority as to the amount of "just compensation." When one of her relations balked at joining the agreement, the Authority invoked the provision of the Pennsylvania Eminent Domain Code designed to cover precisely this sort of problem, an invocation Judge Wood approved. To this day Van Loan has not cited a single case that would cast constitutional doubt on the Eminent Domain Code's eminently sensible process for dealing with dissenters like Mrs. Morelli.

Thus, under any reading of this record, this action should never have begun. As the signer of the pleading that triggered the Authority's waste of time and money, Van Loan is responsible under Rule 11 for the consequences of his action.

An appropriate Order follows.

### ORDER

AND NOW, this 30th day of September, 1993, upon consideration of defendant's motion for sanctions pursuant to Fed.R.Civ.P. 11, plaintiff's *pro se* response, and after a hearing on September 8, 1993, and after consideration of the post-hearing submissions of plaintiff's former counsel and the defendant, and for the reasons stated in the foregoing Memorandum, it is hereby ORDERED that:

1. Defendant's motion is GRANTED; and

2. Jonathan A. Van Loan, Esquire shall, within ten days of the date of this Order, remit to defendant, by bank or certified check, the sum of Three Thousand Eighty-One Dollars and Seventy-Seven Cents ($3,081.77) as reimbursement of reasonable attorneys' fees and expenses.

---

6. Perhaps worst of all, however, in the face of the documentary record against him, Van Loan on September 20 filed a response that, in ¶ 4, set forth a palpable falsehood, namely, that he filed the complaint "[o]n Tuesday, May 18th, 1993," when the docket (and his own correspondence) shows it was filed a week earlier.

7. Such powers "must necessarily result to our Courts of justice from the nature of their institution," *United States v. Hudson & Goodwin*, 11 U.S. 32, 34, 7 Cranch 32, 34, 3 L.Ed. 259 (1812), that is to say, from "their very creation," *Anderson v. Dunn*, 19 U.S. 104, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821).