**UNITED STATES of America,
Plaintiff,**

v.

**Zoraida FIGUEROA–ARENAS, Juan
A. Nunez–Reynes, Defendants.**

**Nos. Crim. 01–186(HL),
Crim. 01–214(HL).**

United States District Court,
D. Puerto Rico.

June 19, 2001.

---

Adalina De–Jesus–Morales, Rio Piedras, PR, Enrique G. Julia–Ramos, Hato Rey, PR, for Zoraida Figueroa–Arenas, defendant.

Jorge E. Vega–Pacheco, U.S. Attorney's Office Dist., Criminal Div., Hato Rey, PR, for U.S.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is Defendant's Motion to Dismiss Information and/or for Reassignment of Case for Violations of Title 18 Section 137 and for Abuse of Discretion in the Assignment of Cases by Chief Judge.[1] In this motion, Defendant, through counsel Adalina de Jesus Morales, levels grave charges against the Court. Counsel alleges,

> [t]he trial of herein defendant, as per a court order issued by Judge Laffitte on June 28, 2000, has been assigned for July 6/July 31, 2001, before Judge Laffitte. Another order by Judge Laffitte regarding the assignment of cases was issued on June 5, 2001.... The chief judge in this case has usurped the authority of his fellow judges and taken control of the assignment system for criminal cases. On June 28, 2000, Chief Judge of the District Court issued a standing order in the Vieques' trespassing cases directing that all trespassing cases shall initially be assigned to the Chief Judge for assignment for distribution by a rotation number to the District Judges, or to a Magistrate Judge, if consented to.... The recent order of June 5, 2001 suggests that, contrary to his standing order, Vieques trespass cases are being assigned randomly by

the clerk's office and then referred to the Chief Judge for reassignment. Either way, the interference with the normal practice of the Court regarding cases assignments [sic] are [sic] unlawful and must be voided as the Chief Judge does not have the authority to alter this practice within the District.... In this case, Defendant's due process rights have been violated by the Chief Judge [sic] actions which are unlawful and in complete disregard of Section 137, supra, and/or the practice of this Court.

### 1. Counsel's Conduct

Counsel's allegation that the Chief Judge has commandeered the case-assignment system is patently false. Further, Counsel filed her motion on June 14, 2001, nine days after the Court entered an order on June 5, 2001, explaining in detail the system that the Court uses in assigning Vieques criminal cases. Counsel explicitly acknowledges the Court's June 5, 2001 order in her motion. The Court's June 5, 2001 order was, in fact, issued in Criminal Case 01–214(HL), just one docket entry prior to Counsel's motion.

As the Court's June 5, 2001 order makes clear, the Vieques criminal cases arising from the most recent spate of trespassing incidents have been assigned to the Judges and Magistrate Judges with the goal of equal distribution via a computerized randomization process conducted by the Clerk of the Court.[2] That order also points out

---

1. Presumably, Defendant's motion intends to cite to 28 U.S.C. § 137, which provides,

   The business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court. The chief judge of the district court shall be responsible for the observance of such rules and orders, and shall divide the business and assign the cases so far as such rules and orders do not other-

wise prescribe. If the district judges in any district are unable to agree upon the adoption of rules or orders for that purpose the judicial council of the circuit shall make the necessary orders.

2. Although Local Rule 302(4) formally applies only to civil cases, the Court's case-assignment procedure complied with its provisions, which state, "[c]ases shall be assigned to

"the widespread but false notion that the Vieques cases were assigned to the Chief Judge for reassignment to the other Judges."[3]

In complete disregard of the Court's June 5, 2001 order, Counsel filed this motion alleging that the Chief Judge controls the assignment of Vieques criminal cases. Counsel also misrepresented the substance of the Court's June 5, 2001 order by stating that "[t]he recent order of June 5, 2001 suggests that, contrary to his standing order, Vieques trespass cases are being assigned randomly by the clerk's office and then referred to the Chief Judge for reassignment."

Finally, Counsel incorrectly states in her motion that "[o]n June 28, 2000, Chief Judge of the District Court issued a standing order in the Vieques' trespassing cases." The Court's June 28, 2000 order was simply not a standing order; it applied only to the Vieques criminal cases arising from the first wave of trespassing incidents in June of 2000. That order provided for the even allocation of cases among the Judges. The order stated that the cases would first be assigned to the Chief Judge "for distribution by a rotation number to the District Judges, or to a Magistrate Judge...." This order served the purpose of preventing the Court from being overwhelmed by the 465 defendants in that wave of cases by allowing for a rational system of case distribution. At the June 15, 2001 status conference in this case, Counsel stated on the record under oath that she had done no investigation to ascertain the veracity of her serious allegations.

In her motion, Counsel cites two cases that are inapposite to the instant case. First, in *Cruz v. Abbate*, 812 F.2d 571 (9th Cir.1987), criminal defendants challenged the Presiding Judge's method of case assignment, by which the Presiding Judge "assign[ed] each case to the judge of his choice." *Id.* at 572. As the Court has made clear, this is not the method used in the District of Puerto Rico. The Ninth Circuit in *Cruz* took pains to note, however, that "a defendant has no right to any particular procedure for the selection of a judge—that being a matter of judicial administration committed to the sound discretion of the court." *Cruz*, 812 F.2d at 574. Instead, a defendant is only entitled to a case-assignment method "free from bias or the desire to influence the outcome of the proceedings." *Id.*

Second, Counsel cites *Utah–Idaho Sugar Company v. Ritter*, 461 F.2d 1100 (10th Cir.1972), for the proposition that the unilateral assignment of cases by the Chief Judge of the District Court violates 28 U.S.C. § 137. In *Ritter*, the Chief Judge of the United States District Court for the District of Utah violated a mandate issued by the Judicial Council of the Tenth Circuit by assigning certain criminal cases to himself. Because there is no such mandate in the instant case, and because the Chief Judge did not assign any cases to himself, *Ritter* is readily distinguishable from the instant case.

### 2. Sanctions

■■■■ The Court has inherent powers that enable it to enforce standards of conduct and to perform its case-management function.[4] These inherent powers apply in

judges of the Court by lot, in such manner that each Judge shall be allotted as nearly as possible the same number of cases in each category."

3. In the order, the Court explicitly warned all counsel in these cases that "it expects all attorneys to remember their obligations not only to their clients but also to the Court."

4. Recognition of the courts' inherent powers

both civil and criminal cases, *Kouri–Perez*, 187 F.3d at 9, and "include the judicial authority to sanction counsel for litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of the proceedings." *Id.* at 7. *See also United States v. Stokes*, 124 F.3d 39, 46 (1st Cir.1997) (holding that "courts may invoke their supervisory powers to implement a remedy for violation of recognized rights, to preserve judicial integrity, or to deter illegal conduct"). The choice of an appropriate sanction is within the Court's sound discretion. *Chambers*, 501 U.S. at 44–45, 111 S.Ct. 2123.

■ There are, however, two significant limitations on the Court's ability to impose sanctions against a party under the authority of its inherent powers. The first is that the sanctioned party must have an opportunity to be heard on the matter. See *Chambers*, 501 U.S. at 50, 111 S.Ct. 2123 (explaining that a court must "comply with the mandates of due process" in imposing sanctions under its inherent power); *Kouri–Perez*, 187 F.3d at 13 (pointing out that a district court cannot impose sanctions without complying with procedural due process); *Media Duplication Services v. HDG Software*, 928 F.2d 1228, 1238 (1st Cir.1991) (saying in this Rule 11 case that before imposing punitive sanctions, a court must sometimes afford the sanctioned party an opportunity to be heard and must always comply with the demands of due

process); *In re Cordova Gonzalez*, 726 F.2d 16, 20 (1st Cir.1984) (announcing that when a court imposes sanctions such as attorney's fees under its inherent power, the court must afford the sanctioned party notice and an opportunity for a hearing). The second limitation is that the Court must make a finding of bad faith on the part of the sanctioned party. *Chambers*, 501 U.S. at 49, 111 S.Ct. 2123; *Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir.1995); *Havinga v. Crowley Towing and Transp. Co.*, 24 F.3d 1480, 1490 (1st Cir.1994); *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 5 (1st Cir.1993). *But see United States v. Claros*, 17 F.3d 1041, 1047 n. 4 (7th Cir.1994); *Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir.1993).

■ In this case, the requirement of an opportunity to be heard is satisfied by the Court's on-the-record, under-oath colloquy with Counsel at the June 15, 2001 status conference. There, the Court specifically asked Counsel what facts underlay the allegations in her motion. Counsel was unable to point to any facts supporting her motion and admitted having no factual support for her charge that the Court was tinkering with the assignment of Vieques criminal cases.

■ As for the requirement of a finding of bad faith, Counsel's bad faith is evident in her willingness via unsupported speculation to impugn the integrity and fairness of

dates from the earliest days of the Republic. Indeed, inherent or "implied" powers "cannot be dispensed with in a Court, because they are·necessary to the exercise of all others." *Chambers*, 501 U.S. at 43, 111 S.Ct. 2123 (quoting *United States v. Hudson*, 7 Cranch 32, 34, 11 U.S. 32, 3 L.Ed. 259 (1812)). Inherent powers find their justification in "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8

L.Ed.2d 734 (1962)). The First Circuit also adheres to this view. See, e.g., *United States v. Kouri–Perez*, 187 F.3d 1, 7 (1st Cir.1999); *United States v. Horn*, 29 F.3d 754, 759 (1st Cir.1994); *In re Villa Marina Yacht Harbor, Inc.*, 984 F.2d 546, 548 (1st Cir.1993); *Zebrowski v. Hanna*, 973 F.2d 1001, 1003–04 (1st Cir.1992); *United States v. Palmer*, 956 F.2d 3, 7 (1st Cir.1992); *R.W. Intern. Corp. v. Welch Foods, Inc.* 937 F.2d 11, 19–20 (1st Cir.1991); *Brockton Sav. B. v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 11–12 (1st Cir. 1985).

the Court in the absence of even the most elementary investigation to assure herself of a factual predicate for her charges. This sort of conduct contributes directly to the diminution of public confidence in the Court as an impartial arbiter of the law, especially when such false allegations find their way into the media. Further, Counsel filed this motion nine days after the Court entered an order explaining in detail the Court's process for assigning Vieques criminal cases, an order which Counsel both acknowledges and misrepresents in her motion.[5]

■ The Local Rules of this Court adopt the American Bar Association's Model Rules of Professional Conduct. *See* Local Rule 211(4)(B). Model Rule 8.2 provides that a "lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge...." For reasons already set forth, Counsel's conduct in this case stands in clear violation of this rule of conduct and thus constitutes "misconduct" under Local Rule 211(4).

In summary, the Court strongly encourages responsible criticism. The Court can not tolerate, however, unfounded, unresearched allegations that reflect negatively on the Court's integrity and call into doubt the public's confidence in their institutions of justice.

WHEREFORE, the Court hereby sanctions attorney Adalina de Jesus Morales $250.00 for each of the two motions that she filed, Civil No. 01–186(HL), Dkt. No. 13 and Civil No. 01–214(HL), Dkt. No. 14,

pursuant to its inherent powers to sanction counsel for litigation abuses which threaten to impugn the district court's integrity.[6] The Court shall not take any further disciplinary action regarding this matter. Counsel shall remit her payment of $500.00 to the Clerk of the Court by June 28, 2001 and shall notify the Court of her compliance.

**IT IS SO ORDERED.**

---

5. Once again, the Court's June 5, 2001 order explicitly warned all counsel in these cases that "it expects all attorneys to remember their obligations not only to their clients but also to the Court."

6. Although the Court told Counsel at the June 15, 2001 status conference that it would refrain from taking any action until after this case's conclusion, the Court deems it necessary to take immediate action to prevent further litigation abuses by all counsel in these proceedings.