**In re Antonio CORDOVA GONZALEZ, Appellant.**

Nos. 83–1214, 83–1326.

United States Court of Appeals, First Circuit.

Argued Nov. 10, 1983.

Decided Jan. 30, 1984.

Certiorari Denied April 23, 1984.

See 104 S.Ct. 2154.

David Rive Rivera, Hato Rey, P.R., with whom Alvaro R. Calderon, Jr., and Calderon, Rosa-Silva & Vargas, Hato Rey, P.R., were on brief, for appellant.

Joyce Kallam McKee, Trial Atty., Washington, D.C., with whom Robert W. Ogren, Chief, Fraud Section, Crim.Div., Dept. of Justice, Washington, D.C., were on brief, for appellee.

Before COFFIN, Circuit Judge, SWYGERT,* Senior Circuit Judge, and BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

Antonio Cordova Gonzalez appeals an order of the district court assessing him $6,500 as a sanction because he withdrew as counsel for the defendant in a criminal case eight days prior to the date set for the start of the trial. His withdrawal necessitated a trial continuance of four months. The $6,500 represented costs incurred by the prosecution preparing for trial, an estimate of its costs for getting ready for the second trial and attorney's fees.

I.

A detailed statement of facts is necessary. On April 30, 1982, a twenty-five count indictment alleging Medicare fraud

* Of the Seventh Circuit, sitting by designation.

was returned against Hector Segarra Irizarry. On May 3 Cordova filed an appearance on behalf of Segarra. A status conference on the case attended by Cordova and the prosecutor was held by the district court on May 20. After the conference, the court entered an order setting June 9, 11, and 14 as the dates for discovery of the government's evidence by the defendant. These dates were chosen to accommodate Cordova. The order also set June 14 as the date for the next status conference and noted that July 9 was the Speedy Trial Act deadline.

On June 14 Cordova moved for a continuance of the status conference scheduled for that same day. The motion was granted and the conference was rescheduled for June 16. Cordova was informed by the court that no further continuances would be granted. At the conference on June 16 Cordova informed the court that the government had supplied him with all the documents it intended to use in its case-in-chief, about two hundred pages, but that he had not yet had a chance to inspect them. He said that on June 18 he would file for an extension of time in which to prepare pretrial motions. Cordova was told by the court that if the motion for extension was not filed promptly or was not justified, the case would be set down for a final pretrial conference and trial.

On June 18 Cordova moved for an extension of the trial and offered to waive the speedy trial rights of his client. The reasons given for the requested extension were: the voluminous documentary material that had to be examined; that Cordova planned to take depositions in a civil case from June 21–25; and that he had planned a two-week vacation after the depositions.

On June 21 the court gave Cordova until July 9 to complete the document inspection and file pretrial motions. The court advised Cordova that taking civil depositions and a vacation "are not reasons for extending the speedy trial limits and should not be presented to the court as such." Cordova was also told that no further extension would be granted for filing pretrial motions

and that the court would review the file on July 9 for pretrial motions and that, if defendant's pretrial motions were not before the court, the case would be set for a final pretrial conference and trial within two weeks. No pretrial motions were filed on behalf of the defendant by July 9. On July 12, the court scheduled a final pretrial conference for July 23 and trial for July 28.

On July 20 Cordova requested permission to withdraw as counsel for the defendant. The only reason given was that the defendant had not paid the attorney fees requested. Cordova was notified by mail and telephone that there would be a hearing on his motion on July 23. Cordova was thirty minutes late for the hearing.

The first witness at the hearing was the defendant, Segarra Irizarry. Segarra is a member of the bar of Puerto Rico, but does not practice law. He testified as follows. He first learned of Cordova's intention to withdraw as his counsel only a few days prior to the hearing. No written fee agreement was entered into between Cordova and himself. In May he received a request for a retainer of $10,000. He did not contest the total amount of the charges, but was not able to pay at this time.

In his testimony, Cordova emphasized something that had not been brought to the attention of the court prior to this time, the failure of the defendant to help him prepare the case for trial. According to Cordova, Segarra had agreed to go through the documents furnished by the government "and make reports to me [Cordova] in connection with the pertinency in the defense of the case." Cordova also testified about difficulties he had with defendant's cousin, Attorney Luis Guillermo Zambrana, who Cordova asserted was co-counsel in the case. Cordova ended his testimony by stating, "defendant for whatever reason he has had, has not put me in a position to defend him properly."

Neither the defendant nor Cordova specified the total fee that was to be charged.

On July 28 the court issued a detailed order recounting the procedural history of the case prior to the date on which the

motion for withdrawal was filed. The court pointed out that the defendant's cousin, Attorney Zambrana, did not appear on the record as counsel for the defendant and that "the only attorney who has appeared in court since the arraignment and bail reduction hearing has been Mr. Cordova Gonzalez." The court specifically found:

Defense counsel justifies his failure in filing the pretrial motions he had announced and his lack of preparation for trial on the fact that defendant did not prepare the relation and study of documents that he had requested from him. It is no secret that any defendant confronted with criminal charges is under stress and hardship. Mr. Cordova Gonzalez' dependence on defendant is unjustified and unnecessarily places the burden on his client beyond permissible limits. His representations to the Court, if accepted as valid, would force us to allow a situation in which an attorney abandons his duty to prepare adequately in protection of his client's interests. It is beyond question that the primary responsibility for the preparation of this case rested on defense counsel and not on defendant. He accepted that obligation when he agreed to defend him. This is not a situation in which a defendant merely refuses to assist his attorney in preparing his defense but rather one in which the attorney has passed on to his client the study of the documentary evidence before he took it upon himself to discharge his duty towards defendant. One cannot help wondering if defense counsel views his role in this case as one of a stand-by counsel for a *pro-se* defendant rather than what it should be—that of a concerned attorney solely in charge of a complex case entrusted to him by a defendant who faces maximum penalties of 125 years imprisonment. Attorney Cordova Gonzalez was granted ample and sufficient time, at his own request, to prepare pretrial motions and failed to do so. His excuses for not complying with the deadline set by the Court are not acceptable. Defense counsel was given complete discovery by the government and all documentary evidence to be used at trial was made available to him.

The court further faulted Cordova for not entering into a fee agreement with his client at the outset of their relationship.

The court concluded:

After reviewing the entire file of this case and considering the testimony of defendant and the statements of his counsel during today's hearing, the Court is convinced that the attorney has been negligent in his preparation of defendant's defense and that he has unduly exposed his client and placed his interest in a speedy trial in jeopardy. He has also jeopardized and undermined defendant's right to the effective assistance of counsel. Solely for this reason and no other the Court firmly believes that defendant could not stand trial on July 28, 1982 since his attorney has not adequately prepared his defense. Thus, to prevent a miscarriage of justice since defendant would be deprived of the effective assistance of counsel if he were to be tried on July 28, 1982, this Court understands that the interest of justice outweighs those of defendant and the public in a speedy trial and, therefore, is forced to continue said trial to a later date which will be fixed in a separate order.

... The Court further understands that the attorney's conduct demands that he be sanctioned by this Court and, therefore, instructs plaintiff to file within the next five (5) days after notice of this Order a memorandum of costs which will be considered by the Court in imposing economic sanctions on this attorney.

In response to the court's order, the government filed a memorandum of costs totalling $4,176.70. It also added the following statement:

The government has not included in its above statement of costs other expenses which resulted from defense counsel's motion to withdraw. However, it should be noted that the government's attorneys spent three hours in preparing a response to the motion to withdraw and nearly

two hours in court for the hearing (including 30 minutes waiting for Mr. Cordova-Gonzalez). In addition, the postponement of the trial will cause the government to incur other expenses in the future. Including in these expenses will be the cost of resubpoenaing the government's witnesses and providing an attorney or agent for the second discovery period necessary for defendant's new counsel. The government requests that the Court consider these as yet uncurred expenses in imposing a sanction on Mr. Cordova-Gonzalez.

On August 13, 1982, the court ordered Cordova "to deposit the sum of $6,500.00 in the Clerk's office within ten days after the notice of this Order in payment of the expenses incurred by plaintiff including attorney's fees." No payment was made. Instead, on August 25 a motion for reconsideration was filed. This motion was denied on the same day it was filed.

On October 8, no payment having been received, Cordova was ordered to show cause within fifteen days why he should not be found in contempt. Cordova asked for and was granted an additional twenty days to respond to the show cause order. His response was filed on November 10. On February 15 the court scheduled a civil contempt hearing for March 4, 1983, to determine whether Cordova should be held in contempt of court.

At the contempt hearing Cordova testified that he had to withdraw as defense counsel because the defendant had not prepared the documents as promised. He stated that he would not have withdrawn for nonpayment of fees and that he gave that as the reason in the motion because "I did not want to jeopardize the defendant, making him look irresponsible." Cordova asserted that the real reason for his motion to withdraw as counsel was that he was not prepared properly to defend the case. He testified that his total fee would have been $30,000 and that all he received was $2,000.

The defendant Segarra testified that the total fee was to be $35,000, that Cordova had asked for a $10,000 retainer and that he had paid him $2,000. Segarra stated that Cordova gave him two reasons for withdrawing, the failure to pay the retainer and that he was not ready for trial. Segarra also testified that he reported to Cordova once a week or every two weeks on the progress he was making with the documents and that he had not finished going over the documents when the motion to withdraw was filed.

Cordova's accountant testified that Cordova was in a very bad financial condition. On cross-examination, however, he admitted that Cordova owned property in Bayamon, Puerto Rico, with a market value of $1,000,000 and a mortgage against it of $600,000.

At the conclusion of the hearing, the court found Cordova in contempt of court, gave him until March 21, 1983, to pay the $6,500 into court, and warned him that if payment was not made by 5:00 P.M. on that date the court would order his immediate commitment.

Cordova filed a notice of appeal on March 18 and asked that the court determine the amount of security to be posted by bond pending appeal. On March 21 the court issued a written order summarizing what had happened to date and committing Cordova to the custody of the United States Marshal "until such time as he purges himself of contempt by complying with the Court's order of August 16, 1982 ...." The court issued a separate order the same day, March 21, addressing Cordova's request for a supersedeas bond pending appeal. It pointed out that the first supersedeas bond was posted by a surety that was unacceptable because it was on a list of sureties owing bonds that had been forfeited by the Commonwealth of Puerto Rico. The court then stated:

As to the substitute bond subsequently filed on March 21, 1983, the Court rules that a stay by the filing of the supersedeas bond under the circumstances of this case as set forth in the contempt judgment would serve to destroy the effectiveness of the contempt proceeding. Furthermore this respondent falsely and

deliberately induced the Court to believe that he was accepting its ruling and would comply with its order by depositing the sanction imposed within the extension of time requested. By such conduct he has obstructed the administration of justice by willfully and unjustifiedly delaying the entry of a contempt judgment against him.

The motion for approval of a supersedeas bond was denied.

The next series of events is not part of the record, but there is no serious dispute about them. Cordova was picked up by a United States Marshal in the late afternoon of March 21. He was informed that he was going to be confined in the Commonwealth prison. He was given an opportunity to call a friend and at 7:14 P.M. $6,500 was paid to the clerk of court. Cordova filed a notice of appeal on April 19.

We conclude our recitation of the facts by noting that new counsel appeared for Segarra on September 2, 1983, the case was tried in November, and Segarra was acquitted on all counts.

## II.

It has long been recognized that federal courts have inherent powers, those which "are necessary to the exercise of all others." *United States v. Hudson,* 7 Cranch (11 U.S.) 32, 34, 3 L.Ed. 259 (1812).

> The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes. See Renfrew, Discovery Sanctions: A Judicial Perspective, 67 Calif.L.Rev. 264, 268 (1979). Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record. But in a proper case, such sanctions are within a court's powers.

*Roadway Express, Inc. v. Piper,* 447 U.S. 752, at 766–67, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1979) (footnotes omitted). *See*

*also Ramos Colon v. United States Attorney for D. Puerto Rico,* 576 F.2d 1, 3 (1st Cir. 1978).

There are three questions: did Cordova's conduct merit sanctions; if so, was he given fair notice and a hearing on the record; and was the sanction imposed excessive.

■ The facts support without question the district court's finding that Cordova was negligent and acted in disregard of his duty to the court and his client. Prior to filing his motion to withdraw, Cordova had never intimated to the court or government counsel that he was having difficulty preparing the case or that his fee had not been paid. The withdrawal motion, filed three days before the final pretrial conference and eight days before the scheduled trial date, was nothing short of an obstruction to the administration of justice. Neither of the two reasons advanced for withdrawal, failure of the client to pay legal fees and failure of the client to prepare discovery documents for trial, justified a withdrawal at this stage of the proceeding. While the facts speak for themselves, it must be noted that Cordova's requests for continuances and extensions of filing dates prior to July 20 had been granted. The court had gone as far as it could go, especially in light of the strictures of the Speedy Trial Act, in giving Cordova additional time for trial preparation. In this connection, we also note that Segarra's new counsel were able to mount a successful defense with two months of preparation.

■ Cordova's right to notice and a hearing before the imposition of sanctions was fully protected, and he does not claim otherwise.

■ We do not think the amount of the penalty was excessive. The sanction was based on the costs actually incurred by the government in preparing for the aborted trial, a well-founded estimate of the cost of preparing for the second trial and attorney's fees. We agree with appellant that intentional bad faith in the conduct of litigation is an impelling factor in determining whether an attorney should satisfy costs

personally. We can think of no clearer example of bad faith in the conduct of litigation than to file a motion for withdrawal eight days before the start of a lengthy and complicated criminal trial on the sole ground that legal fees had not been paid and then at the hearing on the motion advance an entirely different reason for withdrawing as counsel—that the client had not properly prepared the case for trial.

### III.

The question whether the court properly used its civil contempt power is moot because Cordova purged himself of contempt by paying the fine. Once a civil contempt order is complied with, no case or controversy remains. *See In Re Campbell,* 628 F.2d 1260, 1261 (9th Cir.1980) (comprehensive listing of cases).

The only way that Cordova could have challenged the incarceration order was by refusing to pay the fine and going to jail. His decision not to do so ended the civil contempt aspect of the case.[1]

*Affirmed.* Double costs are awarded to the government.

---

**1.** If it is any consolation to Cordova, we note our disagreement with his contention that the court had no right to order incarceration because imprisonment for debt is forbidden by 28 U.S.C. § 2007(a). We can think of no grounds for a successful challenge to the imprisonment order.