**UNITED STATES of America,**
**Plaintiff,**

v.

**Luis E. DUBON–OTERO (10),**
**et al., Defendants.**

**United States of America, Plaintiff,**

v.

**Ramon Luciano Del Rosario,**
**Defendant.**

**Nos. CRIM. 97–091(JAF),**
**CRIM. 99–097(JAF).**

United States District Court,
D. Puerto Rico.

May 19, 2000.

Maria A. Dominguez–Victoriano, Assist. U.S. Atty., Edna Rosario, Assist. U.S. Atty., Guillermo Gil, U.S. Atty, San Juan, PR, Timothy S. Vasaquez, San Juan, PR, for U.S.

Frederick P. Hafetz, Susan R. Nechgeles, New York, NY, David W. Roman, San Juan, PR, for defendant Dubon–Otero.

Howard Srebnik, Miami, FL, Charles W. Fitzwilliam, San Juan, PR, for defendant Garib–Bazain.

Rafael F. Castro–Lang, San Juan, PR, Daniel Morrison, San Juan, PR, for Ramon Luciano–Del–Rosario, defendant.

Maria H. Sandoval, Santurce, PR, for Carlos Santana (2), defendants.

Joseph C. Laws, Maria T. Arsuaga, Federal Public Defender Office, San Juan, PR, for Ruben Lopez–Lopez (3), defendants.

Timothy S. Vasquez, U.S. Attorney's Office, Criminal Division, San Juan, for U.S. Attorneys.

### OPINION AND ORDER

FUSTE, District Judge.

The prosecution moves for sanctions against attorney María H. Sandoval for statements that she made during the jury trial of Defendants Luis Dubón–Otero ("Dubón") and Jorge Garib–Bazaín ("Garib"), while she represented a hostile witness. *United States v. Kourí–Pérez, et al.,* Crim. No. 97–091 (D.P.R., verdict returned Feb. 11, 2000).

We also consider whether to sanction Ms. Sandoval for her statements and behavior as defense counsel during the jury

trial of *United States v. Luciano del Rosario,* Crim. No. 99–097 (D.P.R., verdict returned March 17, 2000), a contemporaneous proceeding before us.

## I.

### Synopsis of Ms. Sandoval's Behavior

#### A. Behavior in United States v. Kouri–Pérez

Defendants Dubón and Garib were tried and convicted of participating in a conspiracy to steal federal program funds through Advanced Community Health Services ("ACHS") in violation of 18 U.S.C. § 666 (1994); Defendant Garib also was convicted of perjury before the Grand Jury in violation of 18 U.S.C. § 1623 (1994).

On January 19, 2000, during the course of the trial, the prosecution, led by Assistant U.S. Attorney María Domínguez–Victoriano, called Carlos Díaz–Olivo as a witness. During the 1992 mayoral race for San Juan, Mr. Díaz–Olivo had been a candidate for that office. According to the prosecution, they had evidence, including a statement by Mr. Díaz–Olivo to a federal law enforcement official, that Defendant Garib had contributed to and participated in Mr. Díaz–Olivo's political campaign with ACHS federal funds destined to AIDS-related expenses. Defendant Garib, however, had previously categorically denied to the Grand Jury that he had had any involvement with any political campaign during this period. His denial formed part of the basis for the perjury charge against him. Consequently, the prosecution called Mr. Díaz–Olivo to the stand to testify about his knowledge of Defendant Garib's involvement with his mayoral campaign.

Upon Mr. Díaz–Olivo's being called to testify, his attorney, Ms. Sandoval, moved to quash the subpoena. Before deciding the motion, we ordered Ms. Sandoval, the prosecution, and the other attorneys in the case to approach the bench. An extended colloquy ensued between the parties, during which time Ms. Sandoval revealed her belief that the prosecution, despite their denials, intended to charge her client, asserting that "[the prosecution has] been misleading me for the last few weeks." *Docket Document No. 1258.* Ms. Sandoval based her assertion upon an alleged telephone conversation she had had with another attorney who the lead prosecutor allegedly had told that she planned to bring charges against Mr. Díaz–Olivo. Moreover, Ms. Sandoval stated that Ms. Domínguez intended to prosecute Mr. Díaz–Olivo "[b]ecause he's not going to give her the version she needs to win a conviction [against Defendants]." *Id.*

Ms. Sandoval also alleged that the prosecution harbored a secret agenda:

> No only is it Ms. Dominguez's agenda to charge Mr. Diaz Olivo using this jury trial as the legal predicate for perjury and obstruction, her agenda is that she opened a den of thieves, and she wants to bring public figures in this courtroom, put them on the witness stand to destroy them. Not because she needs them to prove elements of the offenses, so that she can sum up on the den of thieves.

> \* \* \* \* \* \*

> This is my contention. And mark by words, you will hear her say, in summation, the government brought in these public figures or ex-public figures. Mr. Díaz–Olivo, Cucusa, et cetera, et cetera, every single one of them denied making donations to their campaign.

*Id.*

Finally, Ms. Sandoval repeatedly maintained that the prosecution maliciously charged individuals with perjury when their version of events did not coincide with the prosecution's:

> The issue before the Court is that the only truth which the government recognizes is the truth they want to believe. And if you feel that this is a spurious, frivolous, attenuated suggestion that [Mr. Díaz] is going to be charged, let me just respectfully point the finger at [Defendant] Garib, who stands here charged

with perjury because he gave a version of events that didn't coincide with the one that Maria Dominguez was committed to.

* * * * * *

[T]his is turning into a witch hunt. This is a witch hunt. Whatever version of events that Maria Dominguez and the government doesn't [sic] like, then they're guilty of perjury.

*Id.*

Based upon these statements and the sarcastic and disrespectful tone and high volume at which they were spoken, the prosecution maintains that we should sanction Ms. Sandoval. The prosecution contends that Ms. Sandoval, as an officer of the court, cannot publicly, viciously, and with impunity undermine the integrity of the United States Attorney's Office and its members by fabricating facts and manipulating a colleague's testimony to advance her purposes. The prosecution also asserts that Ms. Sandoval violated the Local Rules of this Court, which incorporate the Model Rules of Professional Conduct, MODEL RULES OF PROFESSIONAL CONDUCT R. 3.5 (1983), as well as this court's July 30, 1997 Order, *Docket Document No. 113,* prohibiting any parties' disclosures to the press. After the court incident concluded, Ms. Sandoval held a press conference before radio, television, and printed media, where she charged the U.S. Attorney's Office and the District Court with transgressions against Mr. Díaz–Olivo's rights. A gag order was in place and Ms. Sandoval knew about it, since its existence was of public knowledge.

In her twenty-three page response, Ms. Sandoval disputes the prosecution's allegations by asserting seven reasons against the imposition of sanctions. First, Ms. Sandoval argues that the inherent power of the court does not extend to prosecutors and, thus, they cannot invoke it, in the absence of a court order, to obligate defense attorneys to reveal the content of confidential conversations between the attorney and her client. Second, she rejects the notion that "the inherent power of the court is so broad that it allows courts to delve into the confidential conversations of defense attorneys, *even in the absence of a showing of illegal or unethical conduct." Docket Document No. 1276, p. 2.* Third, Ms. Sandoval argues that a court may not exercise its inherent power to preempt a defense attorney from vigorously advising her client not to incriminate himself. She maintains that this is particularly true in situations, allegedly like the one before us, when the prosecution deliberately strips opposing counsel of all alternatives, thereby making "strong advocacy [by the defense attorney] absolutely necessary." *Id.* at 8. Fourth, she contends that the prosecution, contrary to its assertion, did mislead her client, Mr. Díaz–Olivo, and her into believing that he was the target of a prosecutorial investigation. Fifth, Ms. Sandoval maintains that the prosecution lacks standing to request sanctions against her because they allegedly violated court rules by filing their motion for sanctions unsealed. By Ms. Sandoval's estimation, the prosecution's behavior in this regard amounts to "a serious lapse of civility as well as a lack of respect for the court and the rule of law." *Id.* at 22. Sixth, she asserts that this court, and not the prosecution, granted Mr. Díaz–Olivo immunity which was co-extensive with his Fifth Amendment rights. Lastly, Ms. Sandoval maintains that "the government remains silent as to its role, if any, in the leaking of information relating to Carlos Díaz–Olivo's interview, although ninety days have elapsed since Mr. Díaz–Olivo filed his motion seeking investigation of the leak." *Id.* at 2.

## B. *Behavior in United States v. Luciano del Rosario*

In *Luciano del Rosario,* three defendants were charged with various drug-trafficking offenses. Ms. Sandoval represented one of them. Before closing arguments, Ms. Sandoval asked, and we grant-

ed, a side bar discussion with all counsel. At this time, Ms. Sandoval presented us with a copy of the motion for sanctions against her recently filed by Ms. Domínguez in *United States v. Kouri–Pérez.* Despite our repeated attempts to inform Ms. Sandoval that we had not had time to read the motion and to advise her that discussing the motion during a separate trial was entirely inappropriate, she continued by accusing the court of conspiring with the government against her. Among her statements, Ms. Sandoval exclaimed:

> [A lawyer] has indicated that [this Court] called him up ... and asked him to cooperate with the government in this investigation [against Ms. Sandoval] and answer Ms. Dominguez's letters and statements.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Once you read [the motion] and don't admonish the government, I think that it will demonstrate your uneven bias in favor of the government and against defense attorneys.

*Docket Document No. 113, Luciano del Rosario.* Ms. Sandoval made scathing accusations in acerbic tones which were sufficiently loud so as to be overheard by the media and public spectators.

In a motion filed on March 24, 2000, *see Docket Document No. 1263, Kouri–Pérez,* Ms. Sandoval apologized to this court for her behavior:

> The undersigned attorney deeply regrets said conduct not because she faces sanctions for said conduct but because she knows that she offended the presiding judge, both personally and professionally. Something she did not intend to do. Judge Fuste should not have been the target of this displaced anger. She asks that the court to forgive [sic] her for this unfortunate incident.

*Id.* at 6.

## II.

### *Authority to Issue Sanctions*
### A. *Inherent Power*

 It is well established that federal courts possess those inherent powers which "are necessary to the exercise of all others." *United States v. Hudson,* 7 (11 Cranch) U.S. 32, 34, 3 L.Ed. 259 (1812). Part of the court's inherent power is the authority to sanction counsel for misconduct and to "assess expenses ... against counsel who willfully abuse [the] judicial process." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *see also In re Cordova Gonzalez,* 726 F.2d 16, 20 (1st Cir.1984) (using the court's inherent power to sanction an attorney in a criminal case who withdrew representation eight days before trial date); *Ramos Colon v. United States Attorney for Dist. of P.R.,* 576 F.2d 1, 3 (1st Cir.1978) (stating that " 'the inherent power of the court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it' ") (quoting *Flaksa v. Little River Marine Constr. Co.,* 389 F.2d 885, 888 (5th Cir. 1968)); *United States v. Kouri–Perez,* 8 F.Supp.2d 133, 140 (D.P.R.1998) (reprimanding defense counsel for inappropriate behavior and imposing monetary fine of $4,000), *appeal dismissed,* 187 F.3d 1, 14 (1st Cir.1999); *United States v. Ortiz–Miranda,* 931 F.Supp. 85, 89 n. 4 (D.P.R. 1996) (pointing out conduct by attorney María H. Sandoval bordering on sanctionable conduct, consisting of violating Model Rule of Professional Conduct 3.5 (1983) and attacking the integrity of the court and the prosecution).

### B. *28 U.S.C. § 1927 (1994)*

 Along with the inherent power of the judicial office, courts also have the statutory authority to sanction attorney misconduct under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may

be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

The First Circuit does not require a finding of subjective bad faith in order to impose sanctions under section 1927. *See Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir.1990). Sanctions under section 1927 are appropriate when counsel's conduct has multiplied the proceedings and, in doing so, has been unreasonable and vexatious, in the sense of being harassing or annoying. *See id.* While negligence, inadvertence or incompetence does not mandate sanctions, actions taken in disregard of whether the conduct is harassing or vexatious may result in sanctions under this section. *See id.; United States v. Kouri–Perez*, 8 F.Supp.2d 133 (D.P.R. 1998), *appeal dismissed*, 187 F.3d 1 (1st Cir.1999).

### III.

### *Analysis*

■ For the purposes of deciding whether to sanction Ms. Sandoval, we consider the incidents in *Kouri–Perez* and *Luciano del Rosario* together.

In *Kouri–Perez*, the prosecution alleges that Ms. Sandoval, as an attorney for a witness in a criminal case, made "a series of reckless, offensive, and patently false allegations against the government" during the trial of Defendants Dubón and Garib. *Docket Document No. 1260.* These statements include allegations concerning the abuse of prosecutorial discretion and the furtherance of personal agendas through criminal investigations.

We find that Ms. Sandoval behaved inappropriately by accusing Ms. Domínguez and the rest of the U.S. Attorney's Office of conducting a witch hunt and malicious prosecution. Additionally, Ms. Sandoval should not have repeated these accusations to the press, in clear violation of this court's gag order. We expect and demand that attorneys at all times comport themselves with the utmost integrity, befitting an officer of this court. Ms. Sandoval must remember that zealous advocacy does not entail personal attacks against opposing counsel or groundless vituperation against the U.S. Attorney's Office or the trial court. Accordingly, Ms. Sandoval must attain and respect the high level of professionalism practiced in this court if she plans to continue to appear before us. We will tolerate nothing less.

Although we do not reach the question of whether her aggregate behavior was harassing and vexatious for purposes of section 1927, we unequivocally find that Ms. Sandoval's statements during the side bar in *Kouri–Perez* were reckless, disrespectful, highly inappropriate, and utterly lacking in professional courtesy. They, in essence, amount to an abuse of the judicial process and deserve to be censured. *See United States v. Kouri–Perez*, 8 F.Supp.2d 133 (D.P.R.1998), *appeal dismissed*, 187 F.3d 1 (1st Cir.1999); *see also John's Insulation, Inc. v. L. Addison and Assocs., Inc.*, 156 F.3d 101, 109 (1st Cir.1998) (explaining the test for sanctions under the inherent power of the court is " '[whether] there is extremely protracted inaction, disobedience of court orders, ignorance of warnings, contumacious conduct, ... or some other aggravating circumstance such as prejudice to the defendant, glaring weakness in the plaintiff's case, and the wasteful expenditure of a significant amount of the district court's time.' ") (quoting *Estate of Solis–Rivera v. United States*, 993 F.2d 1, 2–3 (1st Cir.1993)); *United States v. Nesglo*, 744 F.2d 887, 891 (1st Cir.1984) (affirming lower court's order of sanctions pursuant to section 1927 after it had found bad faith in party's filing of frivolous third-party complaint).

With regard to her accusations of bias directed at this court during the improvised press conference and during the *Luciano del Rosario* trial, we accept Ms. Sandoval's apology without prejudice of a censure and with a firm warning. The next infraction will result in the severest of

penalties being imposed upon her, which could include suspension from practice and the commencement of disbarment proceedings. Hopefully, the specter of ending her career before the District of Puerto Rico will focus her mind and force her to double her efforts immediately. This court can wait no longer. *See Cruz v. Savage,* 691 F.Supp. 549, 557 (D.P.R.1988) (imposing fines against Ms. Sandoval for filing frivolous claims, thereby unnecessarily expending judicial resources).

## IV.

### *Conclusion*

In accordance with the foregoing, we GRANT the prosecution's motion for sanctions. Ms. Sandoval's actions are censured. She is ordered to recommit herself fully to abide by the Local Rules of this Court and norms of civility and collegiality, and adopt a more civil and respectful posture towards this court and all the members of its Bar. She should, therefore, consider herself forewarned that our patience has been exhausted and that we will address future transgressions with the severest of possible sanctions.

This Opinion and Order disposes of *Docket Documents Nos. 1255, 1257, and 1260* in *Kouri–Perez.*

**IT IS SO ORDERED.**