**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GEORGE FARMER, (a/k/a George L.
Farmer),

> Plaintiff - Appellant,

v.

BANCO POPULAR OF NORTH
AMERICA, John Does 1-100,

> Defendants - Appellees.

No. 13-1252
(D.C. No. 1:11-CV-01268-WYD-CBS)
(D. Colo.)

---

**ORDER AND JUDGMENT***

---

Before **KELLY**, **ANDERSON**, and **MATHESON**, Circuit Judges.

George Farmer, a licensed attorney representing himself, appeals from an

order of the district court granting Banco Popular of North America's motion to

enforce a settlement agreement. We affirm.

---

\* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

In 2001, Farmer's father obtained a $150,000 home equity line of credit (HELOC) secured by a house in New Jersey, one block from the ocean.  Farmer's father died in 2002, and Farmer was the sole heir and executor of his father's estate. After his father died and until 2010, Farmer wrote a series of checks to himself against the HELOC, allegedly in his capacity as executor and to reimburse himself for maintenance costs he paid on the property securing the HELOC.  Farmer also made some payments towards the HELOC, but at the time he filed the case underlying this appeal, there was an outstanding balance of approximately $144,000. In 2010, Farmer wrote a $5,000 check to himself against the HELOC and deposited it into his Wells Fargo account.  Banco Popular initially honored the check, but after an investigation into past-due payments, the bank determined that Farmer was accessing his deceased father's HELOC and allegedly threatened Farmer with charges of criminal fraud if he did not pay off the full amount owed on the HELOC.  Banco Popular also closed the HELOC and returned the $5,000 check, allegedly informing Wells Fargo that the check was counterfeit.  This caused Wells Fargo to close Farmer's account and his daughter's account.

Farmer then filed an action against Banco Popular in Colorado state court, alleging twelve claims for relief.  He sought damages and a judgment that the HELOC be voided.  Banco Popular removed the action to federal court and initiated foreclosure proceedings on the New Jersey property.  The parties had multiple

settlement conferences with a magistrate judge, who held a hearing on June 15, 2012, and placed the terms of a settlement agreement on the record. The relevant terms were that Banco Popular would pay Farmer $30,000 and forgive some principal, unpaid interest, and attorney's fees. Farmer would give Banco Popular a deed in lieu of foreclosure that the bank would hold in escrow pending Farmer's repayment of $137,380.94 to Banco Popular, which was to be funded by either the sale of the New Jersey house or refinancing the HELOC with another lender. Banco Popular would return the deed in lieu if Farmer made the repayment by October 15, 2012, but could record it or pursue foreclosure or other remedies if he did not. Farmer agreed to waive defenses to the foreclosure action and give Banco Popular a complete release, and the parties agreed to dismiss the federal action without prejudice. In order to avoid tax consequences, Farmer wanted Banco Popular's $30,000 payment to him to be characterized as a loan and he did not want the bank to issue an IRS Form 1099 showing cancellation of debt. But the magistrate judge suggested that the parties do whatever the tax laws require and make no representations in the agreement about the tax consequences of the settlement. The parties agreed with that suggestion.

The same day as the hearing, Banco Popular sent Farmer a draft settlement agreement and IRS Form W-9, Request for Taxpayer Identification Number and Certification. With regard to taxes, the agreement stated that the bank was forgiving amounts due on the HELOC and was making no representations regarding the tax consequences of the settlement. The agreement did not include the deed in lieu of

- 3 -

foreclosure or a satisfaction of the mortgage, each of which required review by a New Jersey title company. Farmer completed and signed the W-9 the same day and returned it to Banco Popular, but he began to negotiate a number of the other terms of the draft agreement, none of which had to do with the tax issue. Banco Popular rejected most of those changes. On July 2, Banco Popular sent Farmer the completed settlement agreement, but Farmer sought changes to the exhibits. On July 27, the parties filed a joint motion stating they had settled on June 15 and were awaiting further information from the title company regarding Farmer's requested changes.

After Farmer received the revised exhibits, he again sought more changes, including the amount, timing, and structure of the payment. Apparently, due to the length of time it took for the title company to complete its review, Farmer no longer needed the $30,000 upfront payment, and he offered several options for paying Banco Popular either $95,000 or $107,000. On August 7, Banco Popular declined those requests, stating it would file a motion to enforce the settlement agreement unless Farmer tendered the executed agreement before a court hearing scheduled for the next day. In an August 8 email to Banco Popular's counsel, Farmer stated that he was "in agreement with the last version of the Settlement Agreement." Aplee. App., Vol. II at A-285. Like the parties and the district court, we will refer to the agreement Farmer referenced in his email as the "Exhibit K" agreement, which is apparently the one Banco Popular sent to Farmer on July 2. But Farmer challenged the request that, because the estate had not been closed within one year, he had to

- 4 -

sign the attached real estate documents in his capacity as heir and executor. The parties' further discussions proved fruitless, so Banco Popular filed a motion to enforce. In a response filed August 20, Farmer stated that "[t]he Settlement Agreement as drafted is fine," R., Vol. I at 981, and in fact he asked the court to "enforce the Settlement Agreement only (pursuant to the terms that were placed on the record on June 15, 2012)" and extend his repayment date by two months, *id.* at 982. But he again insisted that the real estate documents be revised to show that he was signing them only in his capacity as executor of his father's estate.

The magistrate judge held a conference on August 29. Correspondence from that same day shows that Farmer now sought to reduce his net payment from $107,380.34 to $100,000 but pay it by October 1 instead of October 15. Banco Popular declined that offer, stating that it required payment by October 15 of the full net amount, which had never changed since the June 15 hearing. The magistrate judge held another hearing on September 10, at which Farmer stated that "we all are in agreement to enforce the settlement," and "the only thing that remains is . . . the date that [my payment is] due." R., Vol. III at 7. None of the terms of the agreement were read into the record, but the parties agreed that Farmer would pay Banco Popular $107,380.34 by November 15, 2012. Banco Popular sent Farmer an agreement reflecting the new amount and due date, but instead of signing, Farmer asked for changes and additions. Banco Popular refused most of those changes and asked Farmer to sign the revised agreement, which he never did.

On November 13, two days before his payment was due, Farmer sought to add a liquidated damages provision and a paragraph stating that Banco Popular would not issue Form 1099. He also sought a six-week extension on his due date because Hurricane Sandy, which struck the New Jersey coast on October 29, had delayed an expected loan from a cousin that would finance his payment. Banco Popular responded that it would extend the deadline only if Farmer would sign the agreement without his other proposed changes. He refused, and Banco Popular filed a second motion to enforce and attached a written agreement reflecting the parties' agreement as of the September 10 hearing (the "Revised Agreement"). Farmer responded that the parties had agreed to a settlement on September 10, and he explained his financing troubles. He sought a 45-day extension, the inclusion of a provision that Banco Popular would not issue Form 1099, and a mutual and immediately effective release (the Revised Agreement provided that Farmer's release would be effective upon signing and Banco Popular's release effective upon Farmer's payment).

On December 4, 2012, the magistrate judge held an evidentiary hearing on the second motion to enforce and issued a recommendation that it be granted. He rejected the notion that Farmer's obligation to pay was contingent on obtaining financing, noting that there were several hundred thousand dollars in equity in the New Jersey property. Farmer objected to the recommendation. In response to an order for clarification from the district judge, the magistrate judge issued a

supplemental recommendation stating that he recommended enforcing the Revised Agreement. Farmer filed objections to the supplemental recommendation.

The district judge then held an evidentiary hearing at which the magistrate judge testified and the parties argued at length. The district judge ruled that he would enforce the Exhibit K agreement, observing that Farmer had twice indicated his agreement with Exhibit K. He ordered Banco Popular to pay Farmer $30,000 within 30 days, Farmer to pay Banco Popular $137,380.84 within 60 days, and the parties to file dismissal documents within 75 days. He warned that he would impose the most severe sanctions and penalties if the parties did not comply with his order. At the hearing, the district judge declined Banco Popular's request that he order the parties to sign the agreement absent some authority for such an order. But he did rule that the terms of the settlement and release would be in full force and effect by court order.

Banco Popular timely made its $30,000 payment, but Farmer never made his payment. Instead, he filed a post-judgment motion and then this appeal. Banco Popular filed a motion asking the district court to (1) issue a rule to show cause why Farmer should not be held in contempt for failing to make his payment, (2) order the parties to sign the Exhibit K agreement and its exhibits, and (3) order Farmer to pay attorney's fees. The district court denied Farmer's post-judgment motion and Banco Popular's motion, both without prejudice to refiling pending the outcome of this

appeal. After considering our jurisdiction, we affirm the district court's judgment and deny all relief sought by Farmer. Aplt. Br. 19-20; Aplt. Reply Br. 8-9.

## II. DISCUSSION

### A. Jurisdiction

Concerned about the finality of the district court's order enforcing the settlement agreement, we asked the parties for supplemental briefs. We agree with Banco Popular that the order is not final in the traditional sense of 28 U.S.C. § 1291 because the district judge clearly retained jurisdiction over the issue of signing the agreement and potential sanctions. Nor did the district court certify its order for immediate appeal under Federal Rule of Civil Procedure 54(b). But we conclude that the order is appealable as an injunction under 28 U.S.C. § 1292(a)(1).

"[I]n deciding whether a district court order 'granting' an injunction is appealable under § 1292(a)(1), we consider the substance rather than the form of the motion and caption of the order." *Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 477 F.3d 1151, 1153 (10th Cir. 2007). Even where, as here, an order granting a motion to enforce a settlement agreement and ordering specific performance of that agreement is not denominated an injunction, it is appealable under § 1292(a)(1) if it complies with Federal Rule of Civil Procedure 65(d). *Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1247 (11th Cir. 2012) (Pryor, J., concurring). Rule 65(d) requires an injunctive order to "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail—and not by referring to the

complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). "When the 'order is injunctive in nature, requiring [a party] to perform enumerated steps under threat of the contempt power,' the order is an injunction subject to appellate review under section 1292(a)([1])."[1] *Supreme Fuels Trading FZE*, 689 F.3d at 1247 (Pryor, J., concurring) (quoting *Union Oil Co. of Calif. v. Leavell*, 220 F.3d 562, 566 (7th Cir. 2000)).

The district court's order enforcing the settlement agreement is clearly injunctive in nature. And it complies with Rule 65(d)(1): the order explains why the court issued it, specifically states its terms, and describes the acts required in reasonable detail. Although the order necessarily involves some reference to the parties' settlement agreement, it does not violate this circuit's strict approach to Rule 65(d). That approach "expressly proscribes the issuance of an injunction which describes the enjoined conduct by referring to another document" and "mandates that the parties be able to interpret the injunction from the four corners of the order." *Hatten-Gonzales v. Hyde*, 579 F.3d 1159, 1168 (10th Cir. 2009) (internal quotation marks omitted). The purpose of the strict approach is "(1) to prevent confusion on the part of those faced with injunctive orders and (2) to aid the appellate court in defining the bounds of the injunctive relief." *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 371 (10th Cir. 1996). Here the district court

---

[1]    It is quite apparent that *Supreme Fuels*' reference at this point to § 1292(a)(2) is a typographic error.

ordered the parties to pay clearly defined sums within a specified time frame or risk sanctions and penalties. Thus, "the order is not so vague as to make it impossible to know with any certainty what the district court has decided." *Hatten-Gonzales v. Hyde*, 579 F.3d at 1169 (brackets and internal quotation marks omitted). The threat of sanctions or penalties brings the enforcement order fully within the scope of § 1292(a)(1). *See Supreme Fuels Trading FZE*, 689 F.3d at 1247; *Union Oil Co. of Calif.*, 220 F.3d at 566. Accordingly, we turn to the merits of this appeal.

## B.    Merits

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (internal quotation marks omitted). Where, as here, the formation of a purported settlement agreement is at issue, we look to state contract law to resolve the matter. *See id.* There is no dispute that Colorado law applies here. Under that law, "[w]hether a contract exists is a question of fact to be determined in light of all the surrounding circumstances." *Yaekle v. Andrews*, 195 P.3d 1101, 1111 (Colo. 2008). Thus, although our overarching standard of review is for abuse of discretion, *see Shoels*, 375 F.3d at 1060, we review the finding that the parties reached a binding settlement of the case for clear error, *see, e.g.*, *id.* at 1056; *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000); *see generally United States v. Hasan*, 609 F.3d 1121, 1127 (10th Cir. 2010) (noting abuse-of-discretion review incorporates clear-error standard for fact findings).

Farmer first argues that the Exhibit K agreement the district court enforced is void because Banco Popular did not pay the $30,000 promptly after the June 15, 2012, hearing before the magistrate judge. Farmer claims that the bank's prompt payment—within a week or so—was a condition precedent, and Banco Popular's failure to make prompt payment after the parties' June 15 oral agreement means that Exhibit K is void for lack of consideration. We disagree that prompt payment was a condition precedent: "In general contract law, a condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *St. Paul Fire & Marine Ins. Co. v. Estate of Hunt*, 811 P.2d 432, 434 (Colo. App. 1991). Instead, to the extent the parties' June 15 agreement contemplated that Banco Popular would promptly make the $30,000 payment once Farmer signed a written settlement agreement, it was a promise, not a condition, and the bank's failure to pay promptly does not mean there was a lack of consideration.

It appears that Farmer's consideration argument really concerns Banco Popular's failure to perform promptly, which he claims estops the bank from seeking to enforce the Exhibit K agreement. On that score, we disagree that the bank's failure to pay promptly constituted a breach or estops the bank from seeking to enforce the Exhibit K agreement. First, Banco Popular's promise to make the payment was in consideration for Farmer's execution of the written agreement and his release of all claims against the bank. Farmer never signed the agreement, so

- 11 -

Banco Popular's performance was never triggered. Second, the record reflects that the bank stood ready to make the payment once Farmer had signed a written agreement, but due to the title company's delay and Farmer's continued requests for revisions, time passed, Farmer changed his mind about needing the up-front payment, and he never signed. Despite this, as late as August 20, 2012, Farmer stated he was fine with the Exhibit K agreement (other than his noted objections to portions of the real estate documents), and he did not claim Banco Popular had breached it or was estopped from seeking to enforce it.

Farmer relies heavily on *McKay v. Fleming*, 134 P. 159 (Colo. App. 1913) in arguing that the Revised Agreement superseded, or was in accord and satisfaction or substitution of, the Exhibit K agreement. But in *McKay*, the parties executed a second, written contract and fully performed it. That execution foreclosed an action for breach of a prior contract and potentially could have been in accord and satisfaction of the first even if it was not performed. *See* 134 P. at 159-61. However, *McKay* also noted that when "a new contract is consistent with the continuance of the former one and only provides a new mode of discharging the same, it has no effect unless or until it is performed." *Id.* at 161. Here, in material part, the Revised Agreement provided only a new mode of discharging the parties' payment obligations and it was not performed. Hence, *McKay* is inapposite, and we reject Farmer's argument. The parties' attempt to alter the payment structure did not prevent the district court from enforcing the Exhibit K agreement even though that

- 12 -

agreement was never signed.  *See Yaekle*, 195 P.3d at 1107 (stating that "common law contract principles . . . allow for the formation of contracts without the signatures of the parties bound by them").

Farmer also claims that the Revised Agreement mooted Banco Popular's first motion to enforce, which targeted the Exhibit K agreement.  But he provides no authority for this notion, and at the hearing before the district judge, Banco Popular stated it was amenable to an order enforcing the Exhibit K agreement.  Hence, we cannot conclude that the first motion to enforce the settlement agreement became moot or that the Revised Agreement prohibited the district court from enforcing the Exhibit K agreement.

Farmer next argues that to the extent the district court's enforcement order requires him to provide Banco Popular with a deed in lieu of foreclosure, it violates the signed-writing requirement of Colorado's statute of frauds, which applies to "[e]very contract for . . . the sale of any lands or any interest in lands," Colo. Rev. Stat. § 38-10-108.  To the extent the Colorado statute is applicable to a settlement agreement involving New Jersey real property, it will be satisfied once the real estate documents attached to the Exhibit K agreement are finalized and Farmer signs them. We have no doubt that the district court has the power to order Farmer to execute all necessary documents to effectuate the settlement.  *See Lee v. Hunt*, 631 F.2d 1171, 1173, 1181 (5th Cir. 1980).  We have considered the relief requested by Banco Popular should we remand the case, Aplee. Br. 33-34, but leave those matters to the

- 13 -

district court, as it obviously contemplated when it denied without prejudice Banco Popular's motion that the court order Farmer to sign and assess attorney's fees against him.

Farmer also asserts that the district court exceeded its authority when it ordered the parties to pay or risk sanctions or penalties. We disagree. Courts have the authority to enforce settlement agreements, *Shoels*, 375 F.3d at 1060, and "[a] district court has broad discretion in using its contempt power to require adherence to court orders," *United States v. Riewe*, 676 F.2d 418, 421 (10th Cir. 1982).

Finally, Farmer complains that the district court failed to rule on his two objections to the Revised Agreement (the 1099 issue and the release-timing issue). But the district court's order enforcing the Exhibit K agreement rendered those objections moot.

## III. CONCLUSION

Though in receipt of $30,000 and having agreed to settle the case, Farmer continues to use the New Jersey property (with a value far in excess of the disputed amount) with no payment to Banco Popular, which is prevented from foreclosing on the property. Rather than adhering to the terms of the settlement agreement, Farmer has multiplied the proceedings, causing the court to expend considerable effort, Banco Popular to incur attorney's fees, and delaying the ultimate resolution. The judgment of the district court is affirmed. The district court has all lawful authority to bring this matter to a prompt and just conclusion.

- 14 -

We deny as moot Banco Popular's Motion to Strike Reply Brief, or for Leave to File Sur-Reply Brief, because "[w]e decline to consider arguments raised for the first time in [Farmer's] reply brief." *United States v. Murray*, 82 F.3d 361, 363 n.3 (10th Cir. 1996). Since Volumes II and IV of the record transmitted by the district court were filed under seal, we ordered the parties to explain whether any portions of those volumes should remain sealed. Only Banco Popular has responded, stating it has no objection to unsealing. Accordingly, Volumes II and IV shall be unsealed.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge