FILED
United States Court of Appeals
Tenth Circuit

June 30, 2015

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

GEORGE FARMER, (a/k/a George L. Farmer), individually and as Executor of the Estate of George H. Farmer,

Plaintiff-Appellant,

v.

BANCO POPULAR OF NORTH AMERICA; JOHN DOES 1-100,

Defendants-Appellees.

No. 14-1423

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 11-CV-1268-WYD)**

---

George Farmer, Longmont, Colorado, Pro Se.

Sanjay Shivpuri, Chuhak & Tecson, P.C., Chicago Illinois, for Defendant-Appellee Banco Popular of North America.

---

Before **MORITZ**, **PORFILIO,** and **BALDOCK**, Circuit Judges.[*]

---

**BALDOCK**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

This matter was previously before the Court on Plaintiff George Farmer's appeal from a district court order, in the nature of a mandatory injunction, directing Farmer to perform under the terms of a settlement agreement he reached with Defendant Banco Popular a year earlier. We affirmed. Farmer v. Banco Popular, 557 F. App'x 762 (10th Cir. 2014) (unpublished), aff'g 2013 WL 2112428 (D. Colo. 2013). Now here we are again, this time to consider Farmer's appeal from a district court order imposing fees and costs on him as a punitive sanction for his extended delay in executing the settlement. We exercise jurisdiction under 28 U.S.C. § 1291, and again affirm, while modifying the district court's reasoning and the amount of sanctions imposed. See Stan Lee Media, Inc. v. Walt Disney Co., 774 F.3d 1292, 1296 (10th Cir. 2014) (recognizing the authority to "affirm on any grounds supported by the record."); Valley Improvement Ass'n, Inc. v. United States Fid. & Guar. Corp., 129 F.3d 1108, 1126 (10th Cir. 1997) (recognizing the authority to modify a district court judgment).

I.

Our prior decision recited in detail Farmer's ongoing conduct that led the district judge to "warn that he would impose the most severe sanctions and penalties if the parties did not comply with his order" enforcing the settlement. Farmer, 557 F. App'x at 766. We will not repeat verbatim the tangled and tortuous history of the case ably set out in Part I there. Instead, we simply adopt that factual recitation and restate here only the more salient facts bearing on our review.

2

This litigious ordeal began when Farmer, a resident of Colorado and a licensed attorney who insists on representing himself, sued Banco under federal and state law to challenge Banco's by-all-appearances legitimate demand that he pay off the full amount owed under a $150,000 Home Equity Line of Credit (HELOC) his deceased father obtained in 2001.[1] On June 15, 2012, the parties informed the district court they had reached a settlement and "placed the terms of a settlement agreement on the record." Id. at 764. Banco was to pay Farmer $30,000 and forgive some principal, unpaid interest, and attorney's fees. Farmer's payment of $137,380.94 in satisfaction of the HELOC was then due Banco on October 15, 2012. But soon, Farmer "began to negotiate a number of the . . . terms of the draft agreement." Id. On July 2, Banco "sent Farmer the completed settlement agreement, but Farmer sought changes to the exhibits." Id. These exhibits included a deed in lieu of foreclosure and a satisfaction of mortgage. After Farmer received the revised exhibits he still would not sign the settlement agreement, but "again sought more changes, including the amount, timing, and structure of the payment."[2] Id.

---

[1] Following his father's death in 2002, Farmer continued for an extended period of time to use the encumbered property located near the New Jersey shore and write checks against the credit line, purportedly in his capacity as executor of his father's estate. As a result of a 2010 investigation into past-due payments, Banco became aware that Farmer was accessing his deceased father's credit line. See Farmer, 557 F. App'x at 763.

[2] We are well aware that the district court's order enforcing the settlement recited the events of July 2012 in a somewhat different manner, suggesting Plaintiff *may* not have been responsible for delaying the settlement prior to July 20, 2012.
(continued...)

On August 7, 2012, Banco informed Farmer it would file a motion to enforce the settlement agreement unless he tendered the executed agreement before a court hearing the next day. In an email to Banco the next day, "Farmer stated that he was 'in agreement with the last version of the Settlement Agreement.'" Id. "But Farmer challenged the request that, because [his father's] estate had not been closed within one year, he had to sign the attached real estate documents in his capacity as heir and executor. The parties' further discussions proved fruitless, so Banco . . . filed a motion to enforce." Id. at 764–65. Responding to Banco's motion, Farmer told the court the settlement agreement "'as drafted is fine' . . . and in fact he asked the court to 'enforce the [s]ettlement [a]greement only (pursuant to the terms that were placed on the record on June 15, 2012)' and extend his repayment date." Id. at 765.

Notwithstanding his prior representations to the court, on August 29, 2012, Farmer sought to reduce his net payment of $107,380.34 under the terms of the agreement to $100,000, but pay it by October 1 rather than by October 15. The court held another hearing on September 10 at which Farmer again told the court the settlement was fine: "'[W]e are all in agreement to enforce the settlement,' and 'the only thing that remains is the date that my payment is due.'" Id. (internal brackets

[2](...continued)
See Farmer, 2013 WL 2112428, at *2. Nonetheless, we will follow the facts as stated in our prior decision. See United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir. 1998) (explaining that absent new evidence or new law that would call a prior panel decision in the same case into question, we normally follow that decision).

and ellipses omitted). The parties then agreed that Banco would not pay Farmer $30,000 as previously agreed, but instead, Farmer would pay Banco $107,380.34 by November 15, 2012. "Banco Popular sent Farmer an agreement reflecting the new amount and due date, but instead of signing, Farmer asked for changes and additions. Banco Popular refused most of those changes and asked Farmer to sign the revised agreement, which he never did." Id.

Two days before Farmer's November 15 payment was due, "Farmer sought to add a liquidated damages provision and a paragraph stating that Banco Popular would not issue Form 1099 [presumably for forgiveness of a portion of the debt]. He also sought a six-week extension on his due date because Hurricane Sandy . . . had delayed an expected loan from his cousin." Id. Farmer then refused Banco's offer to extend the payment deadline if he would sign the agreement absent these newly proposed changes, whereupon Banco filed a motion to enforce the revised settlement agreement. "Farmer responded that the parties had agreed to a settlement on September 10." Id. Farmer also "explained his financing troubles" to the court, despite sitting on a piece of New Jersey property valued well in excess of the amount due Banco. Id. Farmer "sought a 45-day extension, the inclusion of a provision that Banco Popular would not issue Form 1099, and a mutual and immediately effective release" all contrary to the revised settlement agreement. Id.

On December 4, 2012, the magistrate judge who had presided over "numerous and lengthy settlement negotiations in this case" held an evidentiary hearing on

5

Banco's second motion to enforce the settlement. Farmer v. Banco Popular, 2013 WL 2112429, at *1 (D. Colo. 2013). The magistrate issued a recommendation that the district judge enforce the settlement. Id. at *1–2. The recommendation rejected the notion that Farmer's obligation to pay was contingent on him obtaining financing. Anticipating he might be called to testify before the district court, the magistrate recused from further involvement in the case.[3] In a supplemental recommendation, the magistrate clarified he was recommending enforcement of the revised agreement. Dist. Ct. Doc. 152, at 1–2 (filed Feb. 7, 2013). Farmer filed objections to both the original and supplemental recommendations.

In May 2013, the district judge held an evidentiary hearing on Farmer's objections. Farmer yet again informed the court "that a settlement has been reached," to which the court responded:

> Let me ask you a question. If a settlement has been reached, why do we need to have this hearing? I mean, you said a settlement has been reached. If there's a settlement why haven't you consummated it—the settlement? And why—why do I have all of these Motions to Enforce Settlement in front of me for—and why are we having a hearing today?

---

[3] The magistrate wrote:

> Given the fact that Mr. Farmer might continue to object to enforcement of the settlement agreement, in which case I would be a witness in any further hearings (having presided over numerous discussions culminating in the settlement agreement and being firmly convinced that the parties reached a mutual agreement), I will enter a separate order recusing myself from this case.

Id. at *2.

6

Dist. Ct. Doc. 181, at 3–4 (filed June 12, 2013) (hereinafter Doc 181). The best answer Farmer could muster was that Banco had breached the first settlement agreement by failing to timely perform, notwithstanding the fact Farmer had never signed the agreement. The district court was unmoved. We too in our prior decision rejected the argument that Banco had breached the first agreement thereby excusing Farmer's failure to perform. Farmer, 557 F. App'x. at 767–68. Once the district judge had heard enough, he decided to enforce the original June 15, 2012 settlement agreement, which Farmer on at least two previous occasions had told the court he approved. The court ordered Banco's payment of $30,000 due in 30 days, Farmer's payment of $137,380.84 due in 60 days, and dismissal documents due in 75 days. "Banco Popular timely made its $30,000 payment, but Farmer never made his payment. Instead, he filed a post judgment motion and [his first] appeal." Id. at 766.

We affirmed the district court's order enforcing the original settlement agreement, and concluded with these parting words for Farmer:

> Though . . . having agreed to settle the case [in June 2012], Farmer continues to use the [mortgaged] New Jersey property (with a value far in excess of the disputed amount) with no payment to [mortgagee] Banco Popular, which is prevented from foreclosing on the property [due to the settlement agreement]. *Rather than adhering to the terms of the settlement agreement, Farmer has multiplied the proceedings, causing the court to expend considerable effort, Banco Popular to incur attorney's fees, and delaying the ultimate resolution. . . . . The district court has all lawful authority to bring this matter to a prompt and just conclusion.*

Id. at 769 (emphasis added).

7

On remand, Defendant Banco, panel decision in hand, renewed its motion initially made prior to Farmer's first appeal for a rule to show cause why he should not be held in contempt for his failure to abide by the district court's order enforcing the original settlement. Only then did Farmer tender $137,380.84 to Banco, rendering the latter's motion for a rule to show cause moot. At the same time, Banco also renewed its motion for an award of attorney's fees and costs pursuant to 28 U.S.C. § 1927 *and* the district court's inherent authority. Alleging both Farmer's vexatious litigation strategy and his bad faith, Banco sought fees in the amount of $56,944.38 and costs in the amount of $11,617.77. These figures represented amounts Banco incurred from July 2, 2012—the date on which, in the words of the panel decision, "Banco Popular sent Farmer the completed settlement agreement," Farmer, 557 F. App'x at 764—until May 14, 2014, the date of the hearing on Banco's fee motion.

In a written order, the district court repeated word for word the facts as stated in our prior decision. The court granted Banco's motion in part based on those facts and the following additional findings.

> I conclude there is substantial evidence that Farmer, a licensed attorney, multiplied proceedings unreasonably and vexatiously *and* engaged in bad faith. After months of settlement negotiations with Magistrate Judge Hegarty where the parties finally reached an agreement, Farmer refused to sign the settlement agreement and instead filed frivolous pleadings and stalled the litigation in an attempt to gain a more favorable settlement. Additionally, at the second evidentiary hearing held on May 14, 2013, . . . I determined that Farmer was engaging in "mischief" and that his arguments were "nonsensical." When Farmer

8

failed to respond to my questions regarding when he would have funds available for the settlement, I concluded that "what that illustrates to me is that Farmer's conduct was a sham to avoid a trial on the merits."

* * *

Given the Tenth Circuit's [statement] that I have "all lawful authority to bring this matter to a prompt and just conclusion," *I find that Farmer's bad-faith conduct in refusing to sign the settlement agreement and unreasonably prolonging this litigation caused both Banco to incur unnecessary expenses and waste the resources of this court.* Thus, I find that the award of attorney fees under both § 1927 and my inherent powers is warranted.

Farmer v. Banco Popular, 2014 WL 4627705, at *3–4 (D. Colo. 2014) (emphasis added) (internal brackets, citations, ellipses, and footnotes omitted).[4] Pursuant to its findings, the district court awarded Banco fees and costs incurred from July 2, 2012. Specifically, the court awarded Banco $41,461.76 in attorney's fees, as well as its requested costs of $11,617.77. The court reduced Banco's fee request to exclude billings of $15,482.62 related to Farmer's prior appeal. Thereafter, the court entered final judgment and Farmer again appealed.

---

[4] In its discussion, the district court pointed to, among other things, the magistrate judge's testimony at the May 2013 evidentiary hearing, during which the magistrate questioned Farmer's statement that he had acted in good faith. The magistrate testified that Farmer "always wants just a little bit more. Just a little bit better deal for him, and he thinks that if he stalls, holds on, that he can get a little better each time. And so whether that's good faith or bad faith, it's a question I have." Id. at *4. What the magistrate judge's testimony says to us is that, in the best case scenario for Farmer, reasonable minds might differ as to whether Farmer acted in bad faith. Of course, that means the district court's finding of bad faith cannot be clearly erroneous. See F.D.I.C. v. Hamilton, 122 F.3d 854, 858 (10th Cir. 1997). Farmer's argument that "there was no evidence that [he] acted in bad faith whatsoever," Pl's Op. Br. at 49, is unworthy of extended comment. The record is replete with instances where, based on Farmer's conduct, a court might infer bad faith.

II.

Because subject matter jurisdiction is a threshold inquiry, we first address Farmer's argument that—notwithstanding the plain language of our prior decision—the district court lacked jurisdiction over this matter following remand and therefore lacked the power to (1) order the settlement enforced (again), (2) sanction him, and (3) enter final judgment reflecting the same. Farmer's argument is frivolous. As the panel decision explained, Farmer's first appeal was interlocutory. The district court's order enforcing the settlement was appealable as an injunction pursuant to 28 U.S.C. § 1292(a)(1). Farmer, 557 F. App'x at 766. In other words, Farmer's underlying suit, upon which the district court's jurisdiction rested, had not been dismissed. Compare United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993) (explaining that while the underlying litigation remains pending, a district court "has the power to summarily enforce a settlement agreement entered into by the litigants"), with Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 381–82 (1994) (holding that where a case is voluntarily dismissed and the order of dismissal fails to mandate the parties' compliance with the settlement agreement, the district court, absent an independent basis for exercising jurisdiction, lacks jurisdiction to enforce the agreement).

The panel observed that "the district court clearly retained jurisdiction over the issue of signing the agreement and potential sanctions." Farmer, 557 F. App'x at 766; see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990)

10

(recognizing that the question of whether to impose sanctions is a collateral matter separate from the merits of an action, and as such may be answered even after the underlying litigation has been terminated). The panel further observed that "[a] trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is still pending before it." Farmer, 557 F. App'x at 767 (quoting Shoels v. Klebold, 375 F.3d 1054, 1060 (10th Cir. 2004)). Later, the panel reiterated:

> We have no doubt that the district court has the power to order Farmer to execute all necessary documents to effectuate the settlement. We have considered the relief requested by Banco Popular should we remand the case, but leave those matters to the district court, as it obviously contemplated when it denied without prejudice Banco Popular's motion [made prior to the first appeal] that the court order Farmer to sign [the settlement agreement] and assess attorney's fees against him.

Id. at 768 (internal citations omitted).

On remand, the district court entered final judgment bringing the underlying litigation to an end, *only after* it assessed fees and costs against Farmer as a sanction. Given all that had gone before, the court prudently incorporated that order, as well as an order that the settlement remain binding and effective, into its judgment. We conclude the district court properly exercised jurisdiction over Banco's post-remand motions, and now turn to Farmer's argument that the terms of the settlement agreement prohibited the court from imposing an attorney-fee sanction on him.

11

III.

Farmer points out that the district court ordered the entirety of the June 15, 2012 settlement agreement enforced, and as part of that agreement Banco waived its right to move for an award of attorney's fees, let alone receive such award. Farmer refers us to paragraph six of the agreement.

> Forgiveness of Banco Popular's Attorneys' Fees. In consideration of Farmer's execution of this Agreement, Farmer's dismissal of his claims against Banco Popular in the Action subject to terms hereof, and Farmer's release of any and all claims, asserted and unasserted, against Banco Popular as defined below, Banco Popular agrees to forgive the entire amount of attorneys fees arising out of, and/or relating to, the HELOC [Home Equity Line of Credit] and the Action.

Dist. Ct. Doc. 169-4, at 23 (filed April 8, 2013). We doubt the parties in settling this matter contemplated waiver of punitive sanctions in the form of attorney's fees arising out of prolonged—and from Banco's viewpoint unforeseeable—legal proceedings to enforce their agreement. See Burke v. Guiney, 700 F.2d 767, 772 (1st Cir. 1983). But what the parties' contemplated is really beside the point.

"It has long been understood that 'certain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which *cannot be dispensed with* in a Court, because they are necessary to the exercise of all others.'" Chambers v. Nasco, Inc., 501 U.S. 32, 43 (1991) (quoting United States v. Hudson, 7 Cranch 32, 34 (1812)) (emphasis added) (internal brackets omitted). Among these *indefeasible* powers is a court's "ability to fashion an appropriate sanction for conduct which abuses the judicial process." Id. at 44–45.

12

In the words of Justice Scalia, "[s]ome elements of [an Article III court's] inherent authority are so essential to the judicial Power . . . that they are indefeasible, among which is a court's ability to enter orders protecting the integrity of its proceedings." Id. at 58 (Scalia, J., dissenting) (internal brackets and quotations omitted)).

Accordingly, the authority of a court to impose attorney-fee sanctions upon a party for bad-faith misconduct depends not on the terms of any private agreement between the litigants "but on how the parties conduct themselves during the litigation. . . . [T]he party, by controlling his . . . conduct in litigation, has the power to determine whether sanctions will be assessed." Id. at 53; see also Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 766 (10th Cir. 1997). Any private agreement tending to relieve a party of the consequences of abusing the judicial process would likely violate public policy. See 2 Restatement (Second) of Contracts 4 (1981) (Introductory Notes to Ch. 8) (indicating that bargains tending to obstruct the administration of justice contravene public policy and are unenforceable).

The most we can say for paragraph six of the settlement agreement is that it permissibly proscribes "*substantive* fee shifting," no doubt in response to a standard provision in the debt obligations underlying the HELOC permitting Banco to recover fees in the event of foreclosure. "Substantive fees are those which are tied to the outcome of the litigation." Scottsdale Ins. Co. v. Tolliver, 636 F.3d 1273, 1279 (10th Cir. 2011) (internal quotations omitted). A provision in a settlement agreement prohibiting the shifting of such fees is a "matter of substantive remedy" and

13

generally enforceable. <u>Chambers</u>, 501 U.S. at 55 (internal quotations omitted).

But paragraph six does not, nor could it, bar "*procedural* fee shifting" ordered pursuant to a court's inherent authority as a sanction for abuse of the judicial process, or, in other words, for "bad faith conduct in litigation." <u>Scottsdale Ins.</u>, 636 F.3d at 1279 (internal quotations omitted). The shifting of procedural fees "is not a matter of substantive remedy, but of vindicating judicial authority." <u>Chambers</u>, 501 U.S. at 55 (internal quotations omitted). "[B]ad faith occurring during the course of litigation that is abusive of the judicial process *undisputably*, at the discretion of the court, warrants sanction through the charging of fees." <u>Towerridge</u>, 111 F.3d at 768 (emphasis added). We therefore categorically reject Farmer's assertion that paragraph six of the settlement agreement limited in any way the district court's ability to entertain Banco's motion for attorney-fee sanctions, and now turn to his challenge to the amount of fees and costs imposed.

## IV.

We review the imposition of an attorney-fee sanction, whether rooted in statute, rule, or a court's inherent authority, only for an abuse of discretion. <u>See</u> <u>Johnson v. Smith (In re Johnson)</u>, 575 F.3d 1079, 1084–85 (10th Cir. 2009). A district court abuses its discretion when it (1) fails to exercise meaningful discretion, such as acting arbitrarily or not at all, (2) commits an error of law, such as applying an incorrect legal standard or misapplying the correct legal standard, or (3) relies on clearly erroneous factual findings. <u>See</u> <u>Chamber of Commerce v. Edmondson</u>, 594

14

F.3d 742, 764 (10th Cir. 2010).

Farmer has represented himself throughout the course of the parties' settlement wranglings. The only exception was the post-remand hearing in the district court that addressed the question of fees as a sanction now before us.[5] Because Farmer appears both as a party and an attorney in this matter, the district court relied both on its inherent authority to sanction a party for bad-faith conduct as discussed in Chambers, and its more limited power to assess fees and costs against an attorney for unreasonable and vexatious multiplication of proceedings as authorized by 28 U.S.C. § 1927.[6] But where a monetary sanction rests in substantial portion on a court's

---

[5] Farmer says he retained counsel for the district court hearing because he believed the district judge was upset with him. On appeal, Farmer goes further and tells us the district judge is not only biased against him but also has a conflict of interest because he served in the same law firm as Banco's local counsel twenty years prior. Farmer asks us in the first instance to vacate the court's attorney-fee sanction and order the judge's recusal. But "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display," do not in themselves "establish[] bias or partiality." Liteky v. United States, 510 U.S. 540, 555–56 (1994). Nor, absent circumstances which do not appear in this case, does a judge's prior membership in a firm whose counsel appears before the court require recusal. See 28 U.S.C. § 455(b)(2). And in any event, Farmer's failure to ask the district judge to recuse is the end of the matter. See Knight v. Mooring Capital Fund, LLC, 749 F.3d 1180, 1191 (10th Cir. 2013) (a party's failure to timely move for a trial judge's qualification in the district court constitutes waiver); Koch v. Koch Indus., Inc. 203 F.3d 1202, 1239 (10th Cir. 2000) (same).

[6] Section 1927 provides that an attorney admitted to conduct cases in any United States court "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."

inherent authority to punish a party for bad-faith conduct unreachable by statute or rule, as it did here, a court need not attribute a portion of the assessment to any particular statute or rule.

> In circumstances such as these in which all of a litigant's conduct is deemed sanctionable [after a certain point], requiring a court first to apply rules and statutes containing sanctioning provisions to discrete occurrences before invoking the inherent power to address remaining instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation . . . .

Chambers, 501 U.S. at 50–51. A district court's inherent power to sanction reaches beyond the multiplication of court proceedings and authorizes sanctions for wide-ranging conduct constituting an abuse of process. See id. at 57. Therefore, we need not address the particular role § 1927 played in the court's imposition of sanctions on Farmer, but instead focus our inquiry (consistent with Chambers) on the district court's exercise of its inherent authority to sanction Farmer for the entirety of his bad-faith delay tactics.

### A.

His prior arguments having failed, Farmer asks us in the alternative to remand this matter and direct the district court to examine all the "pleadings" and identify which of those unreasonably and vexatiously multiplied the settlement proceedings.[7] Pl's Br. at 29–30. "[T]he district court should have examined every single filing

---

[7] To the extent Farmer may argue we have not explicitly addressed all of his voluminous contentions, "we can only respond that not all of them warrant[] explicit response." Hamilton v. Boise Cascase Exp., 519 F.3d 1197, 1203 (10th Cir. 2008).

16

[Farmer] made over the years and determined which ones multiplied the proceedings," because "[t]his is exactly what the law requires, period." Pl's Reply Br. at 12–13 (internal quotations omitted). Only then, according to Farmer, can the court properly determine the fees and costs to award. Farmer declares:

> [I]n order to properly assess the appropriate quantum of fees and costs that plaintiff should be responsible to pay, the [district] court has to . . . analyze the time defendant expended to determine whether plaintiff's filing was a "multiplication, unreasonable, vexatious, bad faith, etc.," as opposed to merely taking the position: "I do not like plaintiff at all, and I am going to punitively sanction him and award defendant 100% of what it seeks, even though I was in the same law firm as defendant's local counsel. I can do so because I am the judge and can do anything I want except award fees and costs for the first appeal because the law prohibits me from doing so . . . ."

Id. at 12. Farmer says "[a] party should . . . not have to deal with a judge's ego." Pl's Br. at 44. Needless to say, we are not impressed with either the substance or the tone of Farmer's diatribe.

As we just explained—and will do so again for Farmer's benefit—the Court in Chambers ruled that when express laws provided by Congress such as § 1927 do not reach the entirety of a litigant's bad-faith conduct, a court may rely instead on its inherent power to impose punitive sanctions. Chambers, 501 U.S. at 57 ("As long as a party receives an appropriate hearing . . . the party may be sanctioned for abuses of process occurring beyond the courtroom . . . ."); see also id. at 62–63 (Kennedy, J., dissenting). As our recitation of the facts in Part I make painfully apparent, Farmer's contemptuous conduct extended far beyond frivolous court pleadings or

17

filings reachable by way of § 1927.

After all, Defendant Banco, not Farmer, was the party initiating the filings because Banco was the party seeking to enforce the settlement agreement which Farmer obstinately refused to execute. As the district court commented in its sanction order: "Farmer refused to sign the settlement agreement and instead filed frivolous pleadings *and* stalled the litigation in an attempt to gain a more favorable settlement." Farmer, 2014 WL 4627705, at *3 (emphasis added). At the hearing preceding entry of that order, the court expressed a similar view, observing that Farmer "used *every trick* up his sleeve to delay the inevitable." Rec. Supp. Vol. I at 17 (emphasis added). Our record review reveals those tricks included repeatedly advising the court that a settlement had been reached, while (1) making persistent and repeated demands for changes to the settlement agreement, (2) refusing to sign the agreement, (3) seeking extensions of the payment due date, and (4) most importantly, failing to make timely payment to Banco as required by the terms of the agreement.

Because the district court relied on its inherent authority to sanction Farmer for his bad faith, we discern no abuse of discretion in the court's failure to address every moment Banco spent and every dollar Banco incurred in seeking to induce Farmer to live up to his end of a bargain. Given Farmer's tendencies, such might "serve only to foster extensive and needless satellite litigation." Chambers, 501 U.S. at 51. The district court shifted a portion of Banco's attorney's fees to Farmer not

18

as a matter of substantive remedy as, for example, in the case of a compensatory fee award to a prevailing party, but primarily to vindicate its authority and to punish Farmer. At the May 2013 hearing, the court informed Farmer "there will be increasing punitive consequences to you if you don't make the payment." Doc 181, at 63. In this sense, the court's sanction was akin to a civil fine. See Hutto v. Finney, 437 U.S. 678. 691–92 (1978) ("We see no reason to distinguish [an] award [of fees for bad faith] from any other penalty imposed to enforce a prospective injunction."). This is a point with which even Farmer might agree. He tells us the district judge "was hellbent on imposing punitive sanctions" on him. Pl's Br. at 22; see also Pl's Reply Br. at 10 (recognizing the district judge "awarded 100% across the board as a punitive measure").

Chambers tells us any argument "that the primary purpose of a fee shift [based on a litigant's bad faith is] compensatory utterly fails." 501 U.S. at 54 n.15 (internal citation and quotations omitted). To that end, the Court in Chambers rejected the argument—the same argument Farmer now makes which we too reject—that the district court "failed to tailor the sanction to the particular wrong." Id. at 56.

> [T]he underlying rationale of "fee shifting" is, of course, punitive. The award of attorney's fees for bad faith serves the same purpose as a remedial fine imposed for civil contempt, because it vindicates the District Court's authority over a recalcitrant litigant. That the award has a compensatory effect does not in any event distinguish it from a fine for civil contempt, which also compensates a private party for the consequences of a contemnor's disobedience.
> * * *
> [F]ull attorney's fees were warranted due to the frequency and severity of Chambers' abuses of the judicial system and the resulting need to

19

ensure that such abuses were not repeated. . . . It was within the court's discretion to vindicate itself and compensate [plaintiff] by requiring Chambers to pay for all attorney's fees.

Id. at 53–54, 56–57 (internal brackets, citations and footnotes omitted).[8]

B.

Consistent with Chambers, we view the award of attorney's fees and costs to Banco in this case as a punitive sanction in the nature of a fine and review it accordingly. Where a court sanctions a recalcitrant party for his abuse of process by an award of fees and costs, sound principles govern our review. See White v. Gen. Motors Corp., 908 F.2d 675, 683–85 (10th Cir. 1990) (addressing an attorney-fee sanction imposed pursuant to Fed. R. Civ. P. 11). First, the amount of fees and costs awarded must be reasonable. Id. at 684. Second, the award must be the minimum amount reasonably necessary to deter the undesirable behavior. Id. at 684–85. And third, because the principal purpose of punitive sanctions is deterrence, the offender's ability to pay must be considered. Id. at 685. Depending on the circumstances, the court may consider other factors as well, including the extent to which bad faith, if any, contributed to the abusive conduct. Id.

---

[8] We understand the conduct at issue in Chambers was much more egregious than Farmer's conduct here. But so too in that case was the award of fees and costs in an amount exceeding $1,000,000 much greater. See id. at 35–40. Regardless, none of that permits us to overlook Chambers' legal analysis, which unquestionably binds us in this case.

20

In this case, the district court employed the lodestar method to determine the reasonableness of Banco's fee request. See Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998) (describing the lodestar calculation as a product of the number of attorney hours reasonably expended and a reasonable hourly rate). That method is an acceptable approach to determine the reasonableness of a fee request under the circumstances presented.[9] See White, 908 F.2d at 684. The court chose a trigger date of July 2, 2012 for imposing fees and sanctions. We discern no abuse of discretion in the court's determination to shift fees and costs from this date forward given the statement of facts contained in our prior panel opinion and adopted by the district court on remand. See Farmer, 557 F. App'x at 764. The court's approval of $250 or thereabouts as a reasonable hourly rate is also acceptable. In calculating the hours expended, the court understood that it could not impose fees associated with Farmer's first appeal: "I do find merit to Farmer's argument that the fee request should be reduced to exclude all billing entries related to the appellate proceedings." Farmer, 2014 WL 4627705, at *5. Thus, the court reduced Banco's fee request by $15,482.62. All this machination resulted in the court imposing $41,461.76 in fees and $11,617.77 in costs on Farmer.

---

[9] We need not now decide whether alternative means of calculation might be available to courts shifting fees and costs as a punitive sanction for conduct undertaken in bad-faith. See, e.g., Hamilton, 519 F.3d at 1206–07.

21

We see no abuse of discretion in the district court's overall approach that would warrant remand, but we do recognize the need for some slight adjustments to the amount of sanctions imposed. In its motion, Banco listed local-counsel fees as expenses. Although dated July 16, a small portion of those fees, specifically $315, appear to be for local counsel's work in June 2012, or prior to the July 2 trigger date. Another $900 in local-counsel fees appears to have been incurred as part of Farmer's first appeal. A $225 filing fee dated June 19, 2013, appears to be an attorney admission fee in connection with the prior appeal. Lastly, the court awarded other expenses in the approximate amount of $815 that are dated during the pendency of the prior appeal. See Morris by Rector v. Peterson, 871 F.2d 948, 951 (10th Cir. 1989) ("Th[e] basic rule is that the determination of the right to sanctions against counsel for conduct during an appeal is reserved to the appellate court, although it may allow the trial court to fix the amount of the fees and costs."). Accordingly, we reduce the fees imposed on Farmer for his bad-faith conduct in delaying the settlement by $1,215 ($315 plus $900), or to $40,246.76. We reduce the costs imposed by $1,040 ($225 plus $815), or to $10,577.77. This results in a monetary sanction of $50,824.53 which Farmer must pay Banco. Banco, of course, may use any and all lawful means to ensure timely collection.

Undoubtedly, Farmer will claim, as he did with his payment due under the settlement agreement, that he does not possess the financial resources to pay this sanction. But Farmer seems to confuse his willingness to pay with his ability to pay.

22

Farmer is a licensed attorney who lives in Colorado and, to our knowledge, still owns a home one block from the New Jersey shore. We do not doubt Farmer's *ability* to procure the required funds. Nor do we doubt that the sanction imposed is the minimum amount reasonably necessary to deter Farmer from further misconduct. Farmer's appellate briefs in places exude a disrespect for both the district court and Banco that is alarming and we have cited some examples. See supra at 16–17; see also Hollingsworth v. Perry, 133 S. Ct. 2652, 2672 (2013) (Kennedy J., dissenting) (recognizing that "litigants and counsel who appear before a federal court[] are subject to duties of candor, decorum, and respect for the tribunal and co-parties alike"). The district court warned Farmer of his peril yet he remained intransigent. The tone of Farmer's most recent appeal provides us no reason to believe anything has changed in his attitude and outlook, and so a significant sanction is appropriate.

\* \* \*

For all the foregoing reasons, the final judgment of the district court, as modified, is affirmed. Sanctions imposed on Farmer in the form of fees and costs due and payable to Banco now total $50,824.53. Farmer is admonished that further prolongation of this appeal absent good cause may result in this Court imposing its own monetary sanctions on him pursuant to Fed. R. App. P. 38. The Clerk of Court is directed to initiate a formal attorney disciplinary proceeding in this Court involving Attorney Farmer to consider whether additional discipline is appropriate in this matter. See 10th Cir. R. 46.6(A) and (C).

AFFIRMED AS MODIFIED.  THE MANDATE SHALL ISSUE FORTHWITH

WITH EACH SIDE TO BEAR ITS OWN COSTS ON APPEAL.